**UNITED STATES of America, Plaintiff,**

v.

**Ben HARDY, et al., Defendants.**

**Civ. A. Nos. 3:90CV–695–J, 3:90CV–792–J.**

United States District Court,
W.D. Kentucky,
Louisville Division.

Feb. 13, 1996.

Anna C. Thode, James R. MacAyeal, Environmental Enforcement Section, U.S. Department of Justice, Washington, D.C., Richard A. Dennis, Regina S. Edwards, Asst. U.S. Attys. United States Attorney, Louisville, KY, for U.S.

Mark Feather, David Langdon, Brown Todd & Heyburn, Louisville, KY, for Ben Hardy, The Hofgesang Foundation, Inc., J.H. Realty, Inc., Liquid Transporters, Inc. and Valley Sanitation, Inc.

Lloyd R. Cress, Carolyn M. Brown, Danny C. Reeves, Marcus P. McGraw, Greenebaum Doll & McDonald, Lexington, KY, for American Synthetic Rubber Co., Atlantic Richfield Co. (ARCO) and Industrial Disposal Co.

Jane I. Tudor, Greenebaum Doll & McDonald, Louisville, KY, for Ashland Chemical Co.

Thomas F. Harrison, Day Berry & Howard, Hartford, CT, for B.F. Goodrich Co. and The Olympic Homecare Products Co.

Bryan G. Tabler, Joan M. Heinz, Marcie R. Horowitz, Barnes & Thornburg, Indianapolis, IN, for Boone Box Co.

George L. Seay, Jr., Wyatt Tarrant & Combs, Frankfort, KY, for Courier Journal & Louisville Times, Reynolds Metals Co., Southern Gravure Service, Inc. and United Catalysts, Inc.

Victor Baltzell, Miller Mosley Clare & Townes, Louisville, KY, for George W. Whitesides Co.

Donald L. Cox, Scott R. Cox, Lynch, Cox, Gilman & Mahan, Louisville, KY, for Hoechst Celanese Corp. and Kewanee Industries, Inc.

Wayne J. Carroll, McKenzie & Peden, Louisville, KY, for Kurfees Coatings, Inc.

Louis H. Clark, Liberty Plastics & Metals Co., Louisville, KY, for Liberty Plastics & Metals Co.

Thomas T. Terp, Charles H. Pangburn, Taft, Stettinius & Hollister, Cincinnati, Ohio, Robert B. Craig, Taft, Stettinius & Hollister, Covington, KY, for Mobil Oil Corp.

Louis E. Tosi, Douglas G. Haynam, Peter J. McCabe, Suller & Henry, Toledo, Ohio, for Owens–Illinois, Inc.

Ellen S. Friedell, Senior Counsel, Rohm & Haas Co., Philadelphia, PA, for Rohm and Haas Co.

David S. Waskey, Day Smith Walton & Durham, Louisville, KY, for Standard Gravure Corp.

Richard M. Sullivan, Kenneth A. Bohnert, Edward F. Busch, Conliffe Sandmann & Sullivan, Louisville, KY, Brett D. Heinrich, Waste Management of Kentucky, Inc., Oak Brook, Illinois, for Waste Management of Kentucky, Inc.

John R. Cromer, Kenneth W. Maher, David E. Dearing, Cromer, Eaglesfield & Maher, Indianapolis, IN, for Dow Corning Corporation.

Edgar A. Zingman, H. Carl Horneman, Wyatt Tarrant & Combs, Louisville, KY, Vanessa M. Berge, David A. Smart, Wyatt Tarrant & Combs, Lexington, KY, for Ford Motor Company.

## MEMORANDUM OPINION

JOHNSTONE, Senior District Judge.

Waste Management moved to alter, amend, or vacate the court's February 21, 1995 Findings of Fact and Conclusions of Law. (Docket Nos. 308 & 313). In the February 1995 opinion, the court concluded that an express indemnity agreement existed between Dow Corning and Tri–City Industrial Services.[1] The court further held that the indemnity agreement covered both liquid and solid waste, continued until April 1968, and encompassed CERCLA liability. The court then determined that Dow Corning could recover the following amounts from Waste Management: (1) the amount that Dow Corning paid to the United States to resolve its CERCLA liability, $321,000; (2) costs and legal fees in the amount of $138,411.99; and (3) prejudgment interest on the amount of $321,000.

### I. January 27, 1964 Indemnity Document

■ First, Waste Management argued that the January 27, 1964 Indemnity Document was unenforceable because: (1) it was not a consistent term nor a mere "memorial" of the contract between the parties; and (2) it modified and expanded the scope of an already existing express indemnity agreement without additional consideration.[2] *See Pool v. First National Bank of Princeton,* 287 Ky. 684, 155 S.W.2d 4 (1941). Waste Management contended that the court should reconsider its holding because the initial documents, i.e. the letter of December 20, 1963 and Purchase Order 150–N, formed a completely integrated contract which did not omit an indemnity agreement. Waste Management maintained that they contained an indemnity agreement which essentially provided: [Tri–City] would hold Dow Corning free and harmless from any liability resulting from any damage due to [Tri–City's] hauling or disposing of these items.

Waste Management compared the language of the initial documents with the January 27, 1964 document to demonstrate that the obligations of Waste Management under the January 27 document were much more expansive. The company then argued that the subsequent January 27, 1964 document was neither a consistent term nor a "memorial" of the already existing contract because (1) there was already an indemnity agreement and (2) the January 27, 1964 document greatly increased Tri–City's responsibilities under the contract.

In its Conclusions of Law, the court held: Restatement (Second) of Contract § 216 (1981) states:

> (1) Evidence of a consistent additional term is admissible to supplement an integrated agreement unless the court finds that the agreement was completely integrated.
>
> (2) An agreement is not completely integrated if the writing omits a consistent additional agreed term which is

---

1. For purposes of this litigation, Waste Management, as the corporate successor of Tri–City, assumed Tri–City's obligations to indemnify Dow Corning.

2. Palmer Benson, Operations Manager of Tri–City, executed the January 27, 1964 document entitled "Indemnity." It stated:

 In consideration of compensation paid by Dow Corning Corporation, its successor and assigns (hereinafter collectively referred to as "Dow Corning") to the undersigned for those certain waste disposal services described below, the undersigned hereby releases, dis-

charges, and agrees to indemnify and save Dow Corning free and harmless from and against any and all loss, damage, injury, liability, and any claim or claims therefor, including claims for injury or death to any and all persons or property including but not limited to employees and property of the undersigned, howsoever caused, resulting directly or indirectly by the collection, transportation, and disposal by the undersigned, its employees, agents, or independent contractors, of certain flammable or otherwise hazardous waste chemicals or material from Dow Corning's premises and plant at Elizabethtown, Kentucky.

(a) agreed to for separate consideration, or

(b) such a term as in the circumstances might naturally be omitted from the writing.

Comment d to § 216 provides that "evidence of the consistent additional terms is admissible unless the court finds that the writing was intended as a complete and exclusive statement of the terms of the agreement." Restatement (Second) of Contract § 216 cmt. d (1981). In *Dohrman v. Sullivan*, 310 Ky. 463, 220 S.W.2d 973, 975 (Ky.1949), the court held that if "all the material terms which are to be incorporated into the contemplated future instrument have been agreed upon," it may be inferred that the instrument is "to be a mere memorial of the contract already final by the earlier mutual assent of the parties to those terms."

12. Here, the court finds that the letter of December 20, 1963 and Purchase Order 150–N did not form a completely integrated document.[3] Further, the indemnity agreement may "naturally [have] be[en] omitted from the writing." During the trial, Lee testified that after Benson signed Purchase Order 150–N, they had a contract, but they "were still awaiting the completion of the indemnity agreement." (Trial transcript p. 57.) Evidence of the "Indemnity" document is admissible as "a consistent additional term" and may be used to supplement the partially integrated contract.

The court agrees with Waste Management that the January 27, 1964 indemnity agreement expanded Tri–City's contractual obligations to Dow Corning. However, Waste Management failed to provide evidence demonstrating that the parties intended to exclude the January 27, 1964 indemnity agreement. Rather, the evidence shows that it was the parties' intent to include this indemnity agreement as part of the contract. During the trial, Lee testified that after Benson signed Purchase Order 150–N, they had a

contract, but they "were still awaiting the completion of the indemnity agreement." (Trial transcript p. 57). In addition, during a 1969 deposition, Lee testified that he had communicated to Benson that he was concerned with the possibility of livestock becoming ill or being injured due to improper waste disposal. (Plaintiff's trial exhibit # 9, Headie Lee 1969 deposition, pp. 35–36). Further, Benson, in a 1971 deposition, testified that Dow Corning was concerned about "someone being hurt or damaged because of the type of material that they had." (Plaintiff's trial exhibit # 10, Palmer Benson 1971 deposition, pp. 5–6).

No additional consideration was needed because the initial documents did not form a completely integrated agreement. Thus, the January 27, 1964 indemnity agreement did not modify a completely integrated agreement. Rather, the indemnity agreement was admissible as "a consistent additional term." The court will not alter its previous opinion with respect to this issue.

## II. CERCLA Liability

■ Next, Waste Management argued that Tri–City had no duty to indemnify Dow Corning for its CERCLA liability at Lee's Lane Landfill in Jefferson County, Kentucky. Relying on *Blackstone Valley Electric Company v. Stone & Webster*, Waste Management maintained that a court, in determining whether an indemnification agreement encompasses CERCLA liability, must consider:

whether any language dealt with CERCLA-type liabilities, whether the scope of the contractual language permitted an inference regarding assumption of future-arising liabilities, whether the agreement predated or post-dated CERCLA's enactment, whether clean up issues were addressed in the parties' negotiations, whether the parties knew of the presence of hazardous wastes on the site, and whether any separate consideration was paid for the release of liability.

*Blackstone Valley Elec. Co. v. Stone & Webster, Inc.*, 867 F.Supp. 73, 78 (D.Mass.1994).

---

**3.** Restatement (Second) of Contracts § 210 (1981) states:

(1) A completely integrated agreement is an integrated agreement adopted by the parties as a complete and exclusive statement of the terms of the agreement.

(2) A partially integrated agreement is an agreement other than a completely integrated agreement.

(3) Whether an agreement is completely or partially integrated is to be determined by the court as a question preliminary to determination of a question of interpretation or to application of the parole evidence rule.

As evidenced in the record, the parties discussed possible damage to animals and property near the site. Both parties knew that some of Dow Corning's materials were hazardous and flammable. The January 27, 1964 agreement contained language that reflects the parties' negotiations and concerns:

> [Tri–City] agrees to indemnify and save Dow Corning free and harmless from and against any and all loss, damage, injury, liability, and any claim or claims therefor, including claims for injury or death to any and all persons or property ... resulting directly or indirectly by the collection, transportation, and disposal by [Tri–City].

Applying the *Blackstone* factors, the court finds that parties intended for the agreement to indemnify against CERCLA liability.

Waste Management also cites *Steego Corporation v. Ravenal*, 830 F.Supp. 42 (D.Mass.1993) and *Mobay Corporation v. Allied–Signal, Inc.*, 761 F.Supp. 345 (D.N.J. 1991) for the proposition that an intent to indemnify against CERCLA liability was not contained in the indemnity agreement between Tri–City and Dow Corning. *Steego Corporation* and *Mobay Corporation* are distinguishable from the present suit. For example, the *Steego* Court found that the indemnity agreement in that suit lacked:

> the clear language necessary to allocate CERCLA liability. The lease contains no language that refers to environmental-related liability and there is no evidence that the parties discussed contamination of the land or that extra consideration was paid for the release of any future-arising environmental liabilities.

*Steego*, 830 F.Supp. at 49. Similarly, in *Mobay Corporation*, the court concluded that "in order for the Court to interpret a contract as transferring CERCLA liability, the agreement must as least mention that one party is assuming environmental-type liabilities." *Mobay*, 761 F.Supp. at 358. Here, as demonstrated by discussions between Benson and Lee, the parties contemplated environmental type liability. The indemnity agreement in the instant action is more expansive than the ones in both *Steego* and *Mobay*.

In its previous opinion, the court relied on *United States v. Hardage*, 985 F.2d 1427,

1434–35 (10th Cir.1993) and *Purolator Products Corp. v. Allied–Signal, Inc.*, 772 F.Supp. 124, 130 (W.D.N.Y.1991). This court reasoned:

> An intent to indemnify against CERCLA liability "may be found where the language of the indemnification is so broad and all-inclusive that it necessarily sweeps all events—including those occurring because of the indemnitee's actions—into its coverage." *United States v. Hardage*, 985 F.2d 1427, 1434–35 (10th Cir.1993). *See Fosson*, 309 S.W.2d at 178. How to determine whether an indemnity agreement contemplated CERCLA liability was discussed in *Purolator Products Corp. v. Allied–Signal, Inc.*, 772 F.Supp. 124, 130 (W.D.N.Y.1991). The *Purolator* Court held:
>
>> [An] agreement which shows that the parties intended to resolve all their disputes involving any type of claim includes CERCLA claims, even if the agreement is framed in general terms and does not specifically refer to CERCLA or to environmental liability. *See, e.g., Mardan Corp. v. C.G.C. Music, Ltd.*, 804 F.2d 1454 (9th Cir.1986); *Mobay Corp. v. Allied–Signal, Inc.*, 761 F.Supp. 345, 358 n. 15 (D.N.J.1991); *Rodenbeck v. Marathon Petroleum Co.*, 742 F.Supp. 1448 (N.D.Ind.1990); *FMC Corp. v. Northern Pump Co.*, 668 F.Supp. 1285 (D.Minn.1987). However, if the agreement appears to be limited to specific disputes or particular types of liability, CERCLA liability will be excluded unless the agreement contains a clear, unambiguous reference to such liability. *See, e.g., Mobay*, 761 F.Supp. at 357–58; *Southland Corp. v. Ashland Oil, Inc.*, 696 F.Supp. 994, 1002 (D.N.J.1988).
>
> *Purolator Products Corp. v. Allied–Signal, Inc.*, 772 F.Supp. 124, 130 (W.D.N.Y.1991).

15. Here, the language in the indemnity agreement was "broad and all-inclusive" and was "framed in general terms." The agreement was not limited to any specific type of loss or damage. Rather, the parties included broad terms such as *"any and all* loss, damage, injury;" "claims for injury or death *to any and all persons or property ;"* "free and harmless from *any liability* resulting from *any damage ;"* and "resulting *directly or indirectly* by the collection, transportation, and disposal by the undersigned."

The court will adhere to its earlier decision and again hold that the indemnity agreement encompassed CERCLA liability.

### III. Tri–City's Profit Compared to Liability

■ Waste Management further stated that its profits were extremely small ($3,131.00) compared to its potential CERCLA liability ($3,255,000.00). Relying on *Mitchell v. Southern Railway Company*, 24 Ky.L.Rptr. 2388, 124 Ky. 146, 74 S.W. 216 (1903), Waste Management contended that the small profit, compared to the large liability, demonstrates that Tri–City did not intend the indemnity agreement to cover environmental claims. *See Employers Mut. Liability Ins. Co. v. Griffin Construction Company*, 280 S.W.2d 179 (Ky.1955); *Washington Nat. Ins. Co. v. Burke*, 258 S.W.2d 709, 710 (Ky. 1953).

First, *Mitchell* is distinguishable from the facts in the present suit. In the *Mitchell* opinion, the court stated:

> When we consider the work to be done by the appellant [indemnitor] was to yield him but a few thousand dollars in gross, and that his profits, if large, considering the work to be done, would necessarily be small in amount, it is improbable that he would undertake to indemnify the appellee [indemnitee] against losses occasioned by *its [appellee's] own acts of negligence.* Especially is it so, when one act of negligence by the appellee might not only sweep away the profits derived form the work, but his entire fortune. Such an interpretation should not be given a con-

tract that would make the appellant responsible for the consequences *of a negligent act of the appellee* unless no other meaning can be ascribed to it.

*Mitchell*, 24 Ky.L.Rptr. at 2390, 74 S.W. 216 (emphasis added). In *Mitchell*, the court declined to allow the indemnittee to recover *for its own negligence.* Here, however, there is no evidence that Dow Corning acted negligently in disposing its waste. Rather, Dow Corning informed Tri–City that some of the materials were hazardous and flammable. Because of the lack of evidence of negligent wrongdoing by Dow Corning, *Mitchell* is inapplicable to the present suit.

Secondly, by examining the negotiations surrounding the contract and the language of the indemnity agreement, the court believes that the parties intended to cover many liabilities, some which may have been quite expensive. The court will not exclude CERCLA liability from Waste Management's contractual obligations under this rationale.

### IV. Attorneys' Fees

■ In its February 21, 1995 Findings of Fact and Conclusions of Law, the court awarded Dow Corning costs and legal fees in the amount of $138,411.99. Based on the testimony of John R. Cromer, Mark S. Medlin, and Donald L. Cox and several trial exhibits, the court concluded that seventy-eight percent of $354,902.53, or an amount of $276,823.97, was an appropriate figure to represent reasonable and necessary fees and costs.[4] Based on equitable considerations, the court then divided this amount in half to reach $138,411.99.[5] Dow Corning objected to

---

4. This amount was based largely on testimony by an attorney and expert witness for Dow Corning, Mark Medlin, who testified that "$272,537.50 of the fees incurred by the Dow Corning Corporation would be reasonable in this matter." (Trial Transcript p. 119–20). He based this conclusion on a "three-part test" which considers: (1) "reasonable number of hours to perform the legal task involved;" (2) "prevailing market rate per unit of time;" and (3) "a multiplier to be applied to the first two elements." (Trial Transcript p. 119–20).

5. Under *Chittum v. Abell*, 485 S.W.2d 231, 237 (Ky.1972), Waste Management had a duty to defend Dow Corning against the CERCLA claims. Pursuant to *Chittum* and *Nucor Corporation v. General Electric Company*, 812 S.W.2d 136, 147–48 (Ky.1991), Dow Corning may be entitled to recover attorneys fees from Waste Management. In *Nucor*, the Supreme Court of

Kentucky wrote that the general rule in Kentucky "is that each party is responsible for its own fees and expenses." *Nucor Corp. v. General Electric Co.*, 812 S.W.2d 136, 147 (Ky.1991). There is an exception to this general rule, as follows:

> "Where a person is obliged to defend against the act of another, against whom he has a remedy over, he may, if such other has notice of the suit and an opportunity to defend, hold him liable for the amount of damages recovered against himself and which he is compelled to pay, together with interest thereon, and also all *reasonable and necessary* costs and expenses incurred in such defense, including attorney's fees." *Middlesboro Home Tel. Co. v. Louisville and N.R. Co.*, 214 Ky. 822, 284 S.W. 104, 108 (Ky.1926).

*Id.* (quoting *Middlesboro Home Tel. Co. v. Louisville and N.R. Co.*, 214 Ky. 822, 284 S.W. 104, 108 (1926)) (emphasis added). The award of attorneys fees depends on equitable factors:

this division. Waste Management argued that the court should have deducted more than half.

■ The court has reconsidered its previous analysis with respect to costs and legal fees. After reevaluation, the courts believes that the amount of $138,411.99 represents reasonable and necessary costs and fees. However, the court reaches this conclusion under alternate justifications which will be outlined here. As pointed out by Waste Management, it is the general rule that "an indemnitee cannot recover attorney's fees in an action against the indemnitor to enforce the indemnity agreement." *Tony Guiffre Distributing Co., Inc. v. Washington Metropolitan Area Transit Authority,* 740 F.2d 295, 298 (4th Cir.1984). *See, e.g., Ranger Construction Co. v. Prince William County School Bd.,* 605 F.2d 1298, 1301–02 (4th Cir. 1979); *Peter Fabrics, Inc. v. S.S. Hermes,* 765 F.2d 306, 316 (2nd Cir.1985); *Vallejos v. C.E. Glass Co.,* 583 F.2d 507, 510 (10th Cir. 1978); *Bagby v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 491 F.2d 192, 198 n. 9 (8th Cir.1974).

During the trial, John Cromer of Cromer & Eaglesfield,[6] testified that Dow Corning did not initially sign the consent decree because:

> Dow Corning had three primary objectives once having been put on notice of the Lees Lane case. The first and primary objective was to let the EPA know that Dow Corning had contractual indemnification with Tri–City Disposal, which is now owned by Waste Management....
>
> Second objective was to attempt to ask the court to preserve our indemnity claim so that it would survive the consent decree the court had before it....
>
> The third primary objective is that Dow Corning did not feel itself to be a major potentially responsible party with respect to the Lees Lane site.... [W]e wanted to be treated fairly and evenhandedly by the government.

(Trial Transcript pp. 83–84, *see* Trial Transcript p. 126). One of Dow Corning's primary objectives was the enforcement of the indemnity agreement. Legal fees generated by this endeavor cannot be recovered. The court considered this factor when it reduced the award of attorneys fees.

In addition to this reason, the court considered various other grounds. First, the court does not believe that Dow Corning's amicus brief filed in *American International v. International Forge* was necessary or reasonable as a cost in the present suit. Dow Corning and Waste Management were not involved in the *American International* suit that was pending before the Sixth Circuit; Dow Corning was unsuccessful in intervening in the Sixth Circuit litigation. (Trial Transcript pp. 85, 103, 109). Secondly, Cromer & Eaglesfield charged Dow Corning $80,000 for an integrated computer support system to help compile data in the present suit. (Trial Transcript p. 113). The court finds these costs to be unreasonable or unnecessary expenses.

Further, Cromer testified that his law firm redacted twenty percent of its entire bill to reach $354,902.53. (Trial Transcript p. 102). However, Cromer was unable to identify precisely how much was redacted for: (1) matters not pertaining to Lee's Lane, (2) ethical considerations, and (3) enforcement of the indemnity agreement. (Trial Transcript p. 101). Similarly, Donald L. Cox, an attorney and expert witness for Waste Management, stated that he was unable to ascertain what the legal fees and costs represented. Cox testified:

> [T]here was another $150,000 [of legal fees and costs] that I couldn't tell one way or the other. Basically there's, there's $25,-000 of fees here that seem to be something they were entitled to and the rest is just a big question mark.

(Trial transcript p. 148).

Moreover, it is also important to compare the result of the litigation with the amount that was expended. In October 1990, the EPA offered to accept $366,258 from Dow Corning to settle its CERCLA claim. In February 1993, Dow Corning agreed to pay

---

"[T]he allowance of such fees is *not automatic in an indemnity judgment,* but *rather depends upon the equities of the situation,* and particularly upon whether the indemnitor failed to provide adequate defense of the claim for damages."

*Id.* (quoting *Chittum v. Abell,* 485 S.W.2d 231, 237 (Ky.1972)) (emphasis added).

**6.** Cromer & Eaglesfield represents Dow Corning in the present suit.

$321,000 to settle EPA's claim. Although the second consent decree contained language protecting Dow Corning's indemnity claim, the 1993 Consent Decree essentially contained the same terms as the settlement offered to Dow Corning in 1990. (Trial Transcript p. 109). After approximately two and a half years of litigation, Dow Corning saved approximately $45,000 in its CERCLA liability, yet charged approximately $354,-902.53.[7] In contrast, Cox testified that he charged Hoechst Celanese only $7,500 in legal fees to negotiate the same $321,000 settlement in the same suit with EPA. (Trial Transcript p. 158).

Based on these factors, the court believes that the amount of $138,411.99 represents reasonable and necessary costs and legal fees.

## V. Prejudgment Interest

 The court has ruled that Dow Corning is entitled to recover prejudgment interest on the amount that Dow Corning paid to the United States to resolve its CERCLA liability, i.e. $321,000.00. However, the court failed to specify what the appropriate prejudgment interest should be. A trial court must exercise discretion in deciding what interest rate is proper in awarding prejudgment interest. *See Reeled Tubing, Inc. v. M/V Chad G,* 794 F.2d 1026, 1029 (5th Cir.1986) (citing *United States v. Central Gulf Lines Inc.,* 747 F.2d 315, 320 (5th Cir. 1984)); *Western Pac. Fisheries, Inc. v. SS President Grant,* 730 F.2d 1280, 1288 (9th Cir.1984); and *United States v. Dollar Rent A Car Systems, Inc.,* 712 F.2d 938, 940 (4th Cir.1983).

In *Blanton v. Anzalone,* the Ninth Circuit noted that "28 U.S.C. § 1961, as amended, sets the postjudgment rate of interest for civil money judgments in federal court at the rate paid on 52–week U.S. Treasury bill." *Blanton v. Anzalone,* 813 F.2d 1574, 1575 (9th Cir.1987). The *Blanton* Court continued: "[T]his rate applies to prejudgment interest unless the trial judge finds, on substantial evidence, that a different rate is appropriate." *Id. See Western Pacific Fisheries,* 730 F.2d at 1289; *FDIC v. British–American Corp.,* 755 F.Supp. 1314, 1328 (E.D.N.C.1991).

In *Diggs v. Pepsi–Cola Metropolitan Bottling Company,* the Sixth Circuit held:

> In our recent decision of *Bailey v. Chattem, Inc.,* 838 F.2d 149 (6th Cir.1988), a panel of our court held that federal law governs the rate of postjudgment interest in diversity cases. However, that same court remarked that "prejudgment interest is a substantive aspect of damages in a diversity case and is thus properly viewed as a matter of state law...." *Id.,* at 159. Our court has repeatedly held that questions of prejudgment interest in diversity actions are to be determined under state law.

*Diggs v. Pepsi–Cola Metropolitan Bottling Co.,* 861 F.2d 914, 924 (6th Cir.1988); *see Sterling v. Velsicol Chemical Corp.,* 855 F.2d 1188, 1213 (6th Cir.1988).

*Diggs* and *Sterling* are distinguishable; this is not a diversity suit. Rather, the United States recovered the amount of $321,-000.00 from Dow Corning under CERCLA. Because this amount was procured under a federal statute, and based on the equities of the case, the prejudgment interest shall be the rate set forth in 28 U.S.C. § 1961.

## VI. Final Judgment

 The court did not intend to make its February 21, 1995 opinion final and appealable. At that juncture, the court believed that a settlement between three remaining defendants, Ben B. Hardy, J.H. Realty, Inc. and The Hofgesang Foundation, Inc. was imminent. However, at the present time, the court is unable to determine when the three remaining defendants will resolve their dispute. Fed.R.Civ.P. 54(b) provides:

> **Judgment Upon Multiple Claims or Involving Multiple Parties.** When more than one claim for relief is presented in an action, ... or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

Fed.R.Civ.P. 54(b) is "designed to facilitate the entry of judgment on one or more claims,

---

7. Cromer testified that the outcome of this case would impact several other pending cases, and thus these fees were reasonable and necessary. (Transcript p. 110–11).

or as to one or more parties, in a multi-claim/multi-party action." *Solomon v. Aetna Life Ins. Co.*, 782 F.2d 58, 60 (6th Cir.1986). The rule attempts to "strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties." *Id.*

The Sixth Circuit, in *Rudd Construction Equipment Company v. Home Insurance Company*, 711 F.2d 54, 56 (6th Cir.1983) wrote:

> First, an order or judgment is certifiable under Rule 54(b) only if it disposes of at least one claim with the degree of finality required to satisfy the appealability standards of 28 U.S.C. § 1291. *Acha v. Beame*, 570 F.2d 57 (2nd Cir.1978). In other words, the order must terminate all issues presented in at least one claim so that nothing remains except enforcement by execution of the judgment.

Here, all claims between Dow Corning and Waste Management have been adjudicated. The court will enter a final judgment as it pertains to these two parties. As explained by the parties, the outcome of the present matter will directly impact several other pending actions, including another action presently before this court, *United States v. Waste Management of Kentucky, Inc.*, Civil Action No. 3:90CV-0632-J. It would help to expedite the other pending cases once the controversy between Dow Corning and Waste Management has been finalized.

In *General Acquisition, Inc. v. GenCorp, Inc.*, 23 F.3d 1022 (6th Cir.1994), the Sixth Circuit outlined several factor to consider when making a Rule 54(b) determination. These include:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense and the like.

*General Acquisition*, 23 F.3d at 1030 (quoting *Corrosioneering v. Thyssen Environmental Systems, Inc.*, 807 F.2d 1279, 1283 (6th Cir.1986)).

Applying these factors to the present situation, the court believes that this matter should be appealable. First, Dow Corning's and Waste Management's disagreement is separate and distinct from the one in which Ben B. Hardy, J.H. Realty, Inc. and The Hofgesang Foundation, Inc. are currently involved. The outcome of this present matter will have no impact upon the three remaining defendants. Secondly, "the possibility that the need for review might ... be mooted by future developments" is extremely slim. Third, there is almost no possibility "that the reviewing court might be obliged to consider the same issue a second time." Fourth, there is not a "claim or counterclaim which could result in set-off against the judgment sought to be made final."

For the reasons stated and in the interest of judicial economy, the court now holds that this judgment will be final and appealable.

## VII. Conclusion

For the reasons stated, the court concludes that:

(1) Waste Management's motion to alter, amend, or vacate the court's February 21, 1995 Findings of Fact and Conclusions of Law is DENIED. (Docket Nos. 308 & 313).

(2) The prejudgment interest on the amount that Dow Corning paid to the United States to resolve its CERCLA liability, i.e. $321,000, shall be the rate set forth in 28 U.S.C. § 1961.

(3) Waste Management's motion to strike Dow Corning's Surreply to Waste Management's Motion to Alter, Amend, and Vacate Judgment and to Amend Findings is DENIED. (Docket No. 338).

(4) This judgment should be a final and appealable. There is no just reason for delay.

(5) An appropriate judgment accompanies this memorandum opinion.

### JUDGMENT

For the reasons stated in the memorandum opinion this day entered, IT IS ORDERED:

(1) Waste Management's motion to alter, amend, or vacate the court's February 21, 1995 Findings of Fact and Conclusions of Law is DENIED. (Docket Nos. 308 & 313).

(2) Dow Corning is entitled to recover $321,000.00 from Waste Management, the amount that Dow Corning paid to the United States to resolve its CERCLA liability.

(3) Dow Corning is entitled to recover $138,411.99 in costs and legal fees from Waste Management.

(4) The prejudgment interest on the amount that Dow Corning paid to the United States to resolve its CERCLA liability, i.e. $321,000, shall be the rate set forth in 28 U.S.C. § 1961.

(5) Waste Management's motion to strike Dow Corning's Surreply to Waste Management's Motion to Alter, Amend, and Vacate Judgment and to Amend Findings is DENIED. (Docket No. 338).

(6) This is a final and appealable judgment. There is no just reason for delay.