199 F.3d 799 (6th Cir. 1999)
 Anthony Thompson (98-5518); Liberty Mutual Insurance Company (98-5585), Plaintiffs-Appellants/Cross-Appellees,
v.
The Budd Company (98-5613), Defendant-Appellee/Cross-Appellant,
Barton-Malow Company, Inc.; Albert Kahn Associates, Inc., Defendants-Appellees,
Merrick Mechanical, Inc., Third Party Defendant-Appellee.
 Nos. 98-5518, 98-5585, 98-5613
 UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT
 Argued: September 24, 1999
Decided and Filed: December 9, 1999
Rehearing Denied Dec. 22, 1999
 
 1
 [Copyrighted Material Omitted][Copyrighted Material Omitted]
 
 
 2
 Hope F. Brooks, Michael R. Hance, FRANKLIN & HANCE, Louisville, Kentucky, for Appellants/Cross-Appellants.
 
 
 3
 Robert Y. Gwin, David Michael Andrew, Charles E. Allen III, BROWN, TODD & HEYBURN, Louisville, Kentucky, for Defendant-Appelle/Cross-Appellant.
 
 
 4
 Lee E. Sitlinger, Sitlinger, McGliney, Steiner, Theiler & Karem, Louisville, Kentucky, for Defendant-Appellee Barton Marlow Company.
 
 
 5
 Mark A. Osbourn, Schiller, Osbourn & Barnes, Louisville, Kentucky, for Defendant-Appelle Albert Kahn Associates, Inc.
 
 
 6
 Barbara A. Kriz, Gallion, Baker & Bray, Lexington, KY, for Third Party Defendant-Appellee Merrick Mechanical Inc.
 
 
 7
 Before: MERRITT and CLAY, Circuit Judges; WISEMAN,* District Judge.
 
 OPINION
 
 8
 THOMAS A. WISEMAN, District Judge.
 
 
 9
 Anthony Thompson ("Thompson"), a Merrick Mechanical, Inc. ("Merrick") employee, sustained serious injuries while working at The Budd Company's ("Budd") Shelbyville, Kentucky manufacturing plant. Thompson sued Budd alleging common law tort claims. The district court entered summary judgment for Budd, finding that Budd qualified as a "contractor" under Kentucky Workers' Compensation law and that Budd was immune from liability. Thompson appeals the district court's decision that Budd is a "contractor."
 
 
 10
 Stemming from the same set of events, Budd brought common law indemnification claims against Barton-Marlow Company,Inc. ("Barton") and Albert Kahn Associates, Inc. ("Kahn") and brought contractual indemnity claims against Barton and Merrick. The district court noted that without legal liability there can be no indemnification. Because Budd was not liable to Thompson, the district court dismissed the common law and contractual indemnification claims. Budd appeals.
 
 
 11
 We find that Budd is a contractor under Kentucky's Workers' Compensation system and AFFIRM the district court's summary judgment against Thompson. Because we find that contractual indemnification, unlike common law indemnification, does not require legal liability to a third party, we REVERSE in part the district court's entry of summary judgment against Budd.
 
 I. FACTUAL AND PROCEDURAL BACKGROUND
 
 12
 Anthony Thompson was an employee of Merrick Mechanical, Inc. Merrick had contracted with The Budd Company to maintain Budd's heating, ventilation, and air conditioning ("HVAC") system. In November 1995, Thompson was working at Budd's automobile part stamping plant. The plant contained a mezzanine level electrical substation. This substation was a restricted area; it remained locked to ensure limited access. Within this area was a set of double doors which opened to the plant floor--sixteen feet below the mezzanine level.
 
 
 13
 Chuck Cummings ("Cummings"), another Merrick employee, was generally responsible for maintaining Budd's HVAC system. The day prior to Thompson's injury, Cummings had requested and received Thompson's aid in changing filters and filter frames. Thompson also helped Cummings the next morning. When they ran out of filters, Cummings and Thompson went to obtain more. The filters were stored in the mezzanine level electrical substation. Cummings unlocked the substation entrance giving Thompson access to the substation. Thompson was unfamiliar with the area and the plant design. While searching for the stored filters, Thompson opened the double doors and fell sixteen feet to the plant floor. Injuries resulting from the fall left him a paraplegic. Since then Thompson has received workers compensation payments through Merrick.
 
 
 14
 Anthony Thompson originally filed a negligence claim in the Shelby Circuit Court of Kentucky on 19 March 1996. Thompson sued Budd for failing to provide a safe working environment. On the basis of diversity jurisdiction, Budd removed the case to the United States District Court for the Eastern District of Kentucky, Frankfort Division, on 16 April 1996. Thereafter, Thompson amended the complaint to include as defendants Barton, who constructed the facility, and Kahn, who provided engineering and consulting services to Barton. Thompson alleged that Barton and Kahn failed to design and construct a safe working environment that complied with all applicable laws and regulations. Budd filed cross claims against Barton, Kahn, and Merrick.
 
 
 15
 In March of 1997, Budd filed a Motion for Summary Judgment against Thompson. After oral argument on this motion in July, 1997, the district court granted Budd's motion for summary judgment. Thompson filed a notice of appeal to this court on 18 August 1997. Finding that the order entering judgment against Thompson was not final because of Budd's pending indemnity claims, this Court dismissed the appeal for lack of jurisdiction.
 
 
 16
 On remand the district court entered a final order dismissing Budd's claims for indemnity against Barton, Kahn, and Merrick. Thereafter, Thompson, Budd, and intervening plaintiff Liberty Mutual Insurance Company filed notices of appeal to this Court.
 
 
 17
 On 18 July 1997, Thompson entered into a settlement agreement with Barton and Kahn which resolved Thompson's claims against these two defendants. In accordancewith the settlement agreement, Thompson agreed to defend Barton and Kahn against Budd's remaining claims.
 
 II. DISCUSSION
 
 18
 We review de novo the district court's grant or denial of summary judgment. See DePiero v. City of Macedonia, 180 F.3d 770, 776 (6th Cir. 1999). We, thus, consider whether there are any issues of material fact and, if not, whether Budd is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); DePiero, 180 F.3d at 776. Additionally, in reviewing summary judgment decisions we view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. Id. (citing Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). The district court ultimately dismissed Budd's indemnity claims for failure to state a claim. Since the court considered affidavits and matters outside the pleadings, the dismissal is treated as a summary judgment. SeeFed. R. Civ. P. 12(c).
 
 
 19
 The lynchpin of the district court's resolution of this case is the holding that Kentucky Workers' Compensation law immunizes Budd from liability for Thompson's injuries. We, therefore, first address Budd's argument that Kentucky's Workers' Compensation system shields it from Thompson's common law tort claims. Only after addressing this issue can we address Budd's various claims for summary judgment.
 
 
 20
 A. Kentucky Workers' Compensation and Immunity from Common Law Tort
 
 
 21
 Analysis of Budd's motion for summary judgment depends on the meaning of two provisions of the Kentucky Workers' Compensation law. SeeKy. Rev. Stat. Ann. §§ 342.610(2)(b) and 342.690(1) (Banks-Baldwin 1997). Section 342.610(2)(b) defines "contractor" as a "person who contracts with another ... [t]o have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person." Section 342.690(1) provides in relevant part: If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee ... and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death. For purposes of this section, the term "employer" shall include a "contractor" covered by subsection (2) of KRS 342.610, whether or not the subcontractor has in fact, secured the payment of compensation.
 
 
 22
 Kentucky law, thus, makes clear that if Budd is a contractor then it has no liability in tort to Thompson, an employee who has received compensation through Budd's subcontractor. See United States Fidelity & Guar. Co. v. Technical Minerals, Inc., 934 S.W.2d 266, 267 (Ky. 1996); Daniels v. Louisville Gas and Elec. Co., 933 S.W.2d 821, 823 (Ky. Ct. App. 1996). Under this regime, Budd's claim raises one basic issue: whether Budd is a contractor[1]. Budd qualifies as a contractor if it contracted to have Merrick "perform[] work of a kind that is a regular or recurrent part of the work of the trade, business, occupation or profession of such person." See Ky. Rev. Stat. Ann. § 342.610(2)(b). No one disputes that HVAC maintenance was regular or recurring; the disagreement centers around whether such maintenance qualifies as "part" of Budd's "work of the trade, business, occupation or profession." See id.
 
 
 23
 Although Kentucky cases have not mapped precisely the contours of section 342.610, they do provide useful guidance to the meaning of "regular or recurrent part of the work of the trade, business, occupation or profession." Kentucky case law is clear that activities beyond one's primary business objective may qualify under section 342.610. For example, "rough carpentry" is a regular or recurrent part of the work of the building construction business, even if the contractor never performed rough carpentry with its own employees. SeeFireman's Fund Ins. Co. v. Sherman & Fletcher, 705 S.W.2d 459, 462 (Ky. 1986). Additionally, emissions testing required by the EPA constitutes a regular or recurring part of a coal fired electric plant's business. See Daniels v. Louisville Gas and Elec. Co., 933 S.W.2d 821, 824 (Ky. Ct. App. 1996). The Danielscourt implied that the mandatory nature of the testing sufficed to establish the necessary connection to the company's business. Id.
 
 
 24
 The Sixth Circuit also has had several opportunities to consider the relationship between the alleged contractor's business and the employee's actions. See, e.g., Granus v. North Am. Philips Lighting Corp., 821 F.2d 1253 (6th Cir. 1987). The plaintiff in Granus was injured after falling at the defendant's manufacturing plant. Seeid. at 1254. Plaintiff was engaged in a project "to refurbish and upgrade a glass-melting installation, or 'tank' at the plant." Id. at 1254-55. Specifically, the plaintiff operated the saw which cut the firebricks that were used to line the furnace. See id. at 1255. The court held that "[t]he evidence established that furnaces at glass factories are rebricked periodically as a matter of maintenance routine." Id. The Court concluded, "The relining of furnaces, required periodically as a matter of regular maintenance, is .. a 'recurrent' part of the manufacturing business in which defendant ... is engaged." Id. at 1258.
 
 
 25
 Given this case law, "part of ... the business of such person" incorporates more than the primary task of Budd's company. Its business of "stamping automotive parts," therefore, may include more than the actual assembly line production of auto parts. As Granus and Daniels indicate, respectively, section 342.610 encompasses regular maintenance of manufacturer's physical plant as well as activities required to conform with applicable governmental regulations. It is undisputed that changing the air conditioning filters was a regular element of Budd's plant maintenance. Although, perhaps, more remotely related to the stamping of auto parts than the lining of furnaces is to glass production, Budd's HVAC system plays an important role in its manufacturing process. Budd points to the winter 1995 temporary shutdown of one of its production lines due to an improperly functioning HVAC system. Thompson neither disputes nor offers an alternative explanation for this shutdown; the general proffer of statements that the HVAC system primarily serves climate control for the comfort of Budd employees simply fails to raise a triable issue of fact. Budd's claim that the Kentucky Building Code required a properly functioning HVAC system also supports the conclusion that Thompson's activities for Budd on the day of his injuries fall within section 342.610. See Daniels, 933 S.W.2d 821. Thus, the district court properly concluded that, for purposes of Kentucky Workers' Compensation, Budd is a contractor and cannot be held liable in tort for Thompson's injuries.
 
 
 26
 B. Workers' Compensation and the Kentucky Constitution
 
 
 27
 Thompson next argues that sections 342.610 and 342.690 combine to limit common law tort liability in violation of sections 14 and 54 of the Kentucky Constitution. Section 14 of the Kentucky Constitution provides, "All courts shall be open, and every person for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."Section 54 provides, "The General Assembly shall have no power to limit the amount to be recovered for injuries resulting in death, or for injuries to person or property."
 
 
 28
 In prior cases, Kentucky courts have addressed the constitutionality of its workers' compensation system and found that it meets constitutional muster. In so holding, Kentucky courts have concluded that the General Assembly did not limit the available recovery due an injury; rather, it provided a system by which persons could consent to limit the amount of recovery in exchange for greater certainty of recovery. Any limitations were agreed to and not imposed. See Edwards v. Louisville Ladder, 957 S.W.2d 290, 295 (Ky. Ct. App. 1997) (citing Greene v. Caldwell, 186 S.W. 648, 652 (Ky. 1916)). By initially proceeding through the workers' compensation system, Thompson waived his constitutional rights protected under sections 14 and 54 of the Kentucky Constitution. See Edwards, 957 S.W.2d at 295 (citing M.J. Daly Co. v. Varney, Ky., 695 S.W.2d 400, 403 (Ky. 1985), overruled on other grounds by Technical Minerals, Inc., 934 S.W.2d at 269)). Thompson's constitutional claims are without merit.
 
 C. Indemnity
 
 29
 In addition to moving for summary judgment against Thompson, Budd also moved for summary judgment as to its indemnity claims against Merrick, Barton, and Kahn. The district court denied Budd's motion for summary judgment on the basis that the claims were due to be dismissed. The court reasoned that without liability there can be no indemnity--whether based in the common law or in contract. Thus, the district court dismissed all claims. In the alternative, the court denied the summary judgment motion because of unresolved issues of material fact. Budd asserts claims for contractual indemnity against Merrick and Barton and claims for common law indemnity against Barton and Kahn. Although the district court treated the common law and contractual indemnity claims alike, Kentucky distinguishes them. Following Kentucky law, we treat these claims separately. We will first address Budd's common law claims for indemnity and then Budd's contractual claims for indemnity.
 
 
 30
 1.The Common Law Indemnity Claims Against Barton and Kahn
 
 
 31
 In 1987 the Supreme Court of Kentucky addressed the common law right to indemnity in Crime Fighters Patrol v. Hiles, 740 S.W.2d 936 (Ky. 1987). In Crime Fighters, the underlying claim involved an assault on a customer, Hiles, at a White Castle restaurant. Hiles claimed that White Castle knew of the assailant's violent propensities, yet failed to protect him. The restaurant filed a third party suit against its security firm, Crime Fighters Patrol, alleging that they breached their contract by failing to keep order. The court noted that the common law provided White Castle and Crime Fighters Patrol complete indemnity from the assailant if they could prove that he was more to blame (at greater fault) than they for Hiles' injuries. See Crime Fighters, 740 S.W.2d at 939. The Crime Fighters court brought the common law right of indemnity into fuller relief by looking to the equitable principle of restitution:
 
 
 32
 Where a person has become liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels, which was created by the misconduct of the other, ... he is entitled to restitution from the other for expenditures properly made in the discharge of such liability.
 
 
 33
 Crime Fighters, 740 S.W.2d at 940 (quoting Restatement of Restitution § 95 (1937)).
 
 
 34
 In essence, we have a very similar situation before us. Budd alleges that Barton and Kahn bear greater responsibility for the dangerous condition--if any--atBudd's Shelbyville plant. The Crime Fighters rule seems to apply to the case at hand, except for the first clause--"Where a person has become liable." In addressing Kentucky's common law indemnity claim, courts have repeatedly recognized liability as a prerequisite. See, e.g., Clark v. Hauck Mfg. Co., 910 S.W.2d 247, 253 (Ky. 1995) ("Indemnity is not an issue until fault has been determined.... There can be no indemnity without liability."); Poole Truck Line, Inc. v. Commonwealth, 892 S.W.2d 611, 614 (Ky. Ct. App. 1995) ("Both indemnity and contribution depend upon liability by one or both parties to the original claimant who suffered the original loss. Without such liability, there is no independent right to indemnity or contribution."). In general, then, a party cannot recover under a common law indemnity claim if it has not been held liable to a third party[2]. Budd is not liable to Thompson; thus, Budd's common law indemnity claims fail.
 
 
 35
 To the extent that Budd's common law indemnity claims also involve claims for attorney fees, they fail as well. Generally, each party is responsible for its own attorney fees and expenses. See Nucor Corp. v. General Elec. Co., 812 S.W.2d 136, 147 (Ky. 1991). The Nucor court noted, however, that exceptions to this general rule apply where equity indicates that attorney fees should be indemnified. Id.; see also, Chittum v. Abell, 485 S.W.2d 231, 237 (Ky. Ct. App. 1972). The Chittum court specifically stated that attorney fees may "be allowed in the judgment of indemnity for the damages." Id., 485 S.W.2d at 237. Chittumindicates that liability for the underlying claim is also a prerequisite for a common law indemnity claim for attorney fees. Thus, the district court properly denied Budd's motion for summary judgment and dismissed Budd's common law indemnity claims (including attorney fees) for failure to state a claim.
 
 2. The Contractual Indemnity Claims
 
 36
 Budd's motion for summary judgment also alleged contractual bases for its indemnity claims. Kentucky law provides that "[t]he nature of an indemnitor's liability under an indemnity contract shall be determined by the provisions of the indemnity agreement itself." United States Fidelity & Guar. Co. v. Napier Elec. & Constr. Co., Inc., 571 S.W.2d 644, 646 (Ky. Ct. App. 1978). Under Napier, parties may contractually provide for indemnification for--among other things--the costs incident to potential legal liability as well as for the legal liability itself[3]. Wenow decide whether Budd contracted with Merrick and Barton for indemnification for its legal expenses in defending the suit brought by Thompson irrespective of whether liability has been imposed on Budd.
 
 
 37
 a. Budd's claims against Merrick
 
 
 38
 Budd and Merrick argue that three different documents represent their contractual agreement: (1) Purchase Order 94-06004 ("First Purchase Order"); (2) Purchase Order 94-06539 ("Second Purchase Order"); and (3) Budd's Quotation Request Form ("Bid Request"). In terms of their actual indemnity language, which contract controls is immaterial because each indemnity provision has the same legal effect as to the events in question. Paragraph fourteen on the reverse side of both the First Purchase Order and the Second Purchase Order contains the following language:
 
 
 39
 Seller [Merrick] agrees to indemnify, defend and hold harmless the Buyer [Budd] ... and [defend][4] from and against any and all demands, actions, causes of actions, suits, costs, fees, penalties, damages (consequential and otherwise), attorneys' fees and all other liabilities and obligations whatsoever ("Losses") arising out of or relating to: (a) personal injuries, damages or death to any natural person ... which relates to, in whole or part, (i) any manufacturing, design, or other defect, failure to warn, improper handling, and improper operating installation or other act or omission of Seller with respect to any of the Products or (ii) the performance by Seller of any services ....
 
 
 40
 The language in this contract is very broad; it requires indemnification not only for penalties and damages but also for suits, costs, attorney fees, and all other liabilities and obligations. As the contract provides, only where the costs or attorney fees are "clearly shown to have resulted solely and directly from [Budd's] gross negligence or willful misconduct" can Merrick avoid liability under either one of these contractual provisions.
 
 
 41
 The Bid Request also contains indemnity language; its language, however, differs from the indemnity provision just quoted. Specifically, paragraph seventeen on the reverse side of the Bid Request provides as follows: Seller agrees to indemnify and protect Buyer against all liabilities, claims or demands for injuries or damages to any person or property arising out of any labor performed on Buyer's premises by Seller under this contract or out of any use by Seller or Buyer's tools or equipment, including any legal fees or cost incurred by Buyer in connection therewith.
 
 
 42
 This provision, like the purchase order indemnity provisions, is very broad; it provides for indemnity not only for legal liabilities but also for costs associated with mere claims or demands as well as legal fees. Although not as clear as the language in the purchase orders, the Bid Request indemnity provision would also require Merrick to indemnify Budd for Budd's negligence. See Fosson v. Ashland Oil & Ref. Co., 309 S.W.2d 176 (Ky. 1958). In Fosson, the court considered a contract with indemnity language similar to the Bid Request:
 
 
 43
 The Contractor shall indemnify the Owner against all claims, demands, liens, taxes, loss or damages of any character suffered by the Owner and shall savethe Owner harmless from all liability growing out of or incurred in the prosecution of said work or arising from any operations, acts, or omissions of Contractor.
 
 
 44
 Id. at 177. The court construed such language to include indemnity for the owner's negligence. SeeId. at 178. The court expressly refused to require a specific statement to the effect that indemnity "include[s] the owner's own negligence." Id. The court noted, "we can hardly envision a more inclusive indemnity provision." Id. The Fosson court also relied on the fact that the contractor was required to carry insurance satisfactory to the owner. Id. The Bid Request, immediately after the indemnity provision, allows Budd to require Merrick to prove the level of its insurance coverage--indicating that Budd had a vested interest in Merrick's insurance. Fossoncompels us to find that the Bid Request contract includes indemnification for Budd's own negligence. Thus, as to their meaning, which indemnity provision controls is immaterial.
 
 
 45
 Merrick next seeks to raise a genuine issue of material fact by challenging the legal validity of the indemnity provisions in particular contracts. First, Merrick argues that the Second Purchase Order is unsigned, thus making its indemnity provision unenforceable if the Second Purchase Order controls.[5] For support in this claim, Merrick looks to Kentucky Revised Statutes 371.010(4)[6] and 342.690(1).[7] Under these provisions, an indemnity provision generally must be in writing and signed by the indemnitor. The Court of Appeals of Kentucky, however, has noted that "if one promises to pay the debt of another in order to further some purpose of his own, ... such promise is not within" section 371.010(4). Barnett v. Stewart Lumber Co., 547 S.W.2d 788, 790 (Ky. Ct. App. 1977). In this case, Merrick agreed to indemnify Budd as part of its consideration for being awarded the maintenance service contract. Because Merrick agreed to indemnify Budd in order to advance its own purpose, Merrick cannot seek cover under Kentucky's statute of frauds. Similarly, section 342.690(1) provides no relief for Merrick. This statute merely requires that the contract be written. In this case, the Second Purchase Order is written and specifically provides for acceptance by performance or signature. Moreover, Merrick admits that it has a history of including indemnity provisions in its contractswith Budd. Both the explicit language of the statute and the equities of the situation prevent the conclusion that section 342.690(1) would invalidate the Second Purchase Order's indemnity provision.
 
 
 46
 Finally, Merrick seeks to raise a genuine issue of material fact as to which contract controls by arguing that the First Purchase Order improperly incorporates its indemnity provision.[8] Merrick's argument does not raise a genuine issue of material fact. Merrick claims that Kentucky law requires language incorporating provisions from the back of a contract "be conspicuous by being in larger or other contrasting type or color." Hertz Commercial Leasing Corp. v. Joseph, 641 S.W.2d 753, 756 (Ky. Ct. App. 1982). Merrick, however, gives too much weight to Hertz; subsequent cases apply a lower standard. In Bartlett Aviation, Inc. v. Dry Lake Coal Co., Inc., 682 S.W.2d 796 (Ky. Ct. App. 1985), the court of appeals noted that Hertz relied on case law addressing a provision seeking to limit implied warranties--a provision which the law requires to be "conspicuous," that is, to be in larger or contrasting type. SeeBartlett, 682 S.W.2d at 798. The Bartlett court addressed an arbitration provision and concluded that when the incorporating language is above a contractor's signature, "we know of no case law or statutes which require that the incorporation language for the arbitration provision be stated in bold type or in any unusual form." Id. In another arbitration clause case, Kentucky likewise required that the incorporating language merely be plain and clear. See Home Lumber Co. v. Appalachian Reg'l Hosps., Inc., 722 S.W.2d 912, 914 (Ky. Ct. App. 1987).
 
 
 47
 Although the issue in this case is an indemnity provision as opposed to an arbitration provision, the distinction is immaterial. The first purchase order contains the following incorporating provision:
 
 
 48
 THE SELLER IN ACCEPTING THIS ORDER AGREES TO ALL TERMS AND CONDITIONS SET FORTH ON THE FACE AND REVERSE HEREOF ALL OF WHICH ARE MADE PART OF THIS ORDER[.]
 
 
 49
 This language is undoubtably clear. The fact that the this language is in a smaller font-albeit in all capitals--than much of the rest of the contract is immaterial. In every alleged contract between Merrick and Budd-including the bid request--the indemnity provision is on the reverse side of the purchase order. Merrick has acknowledged that indemnity provisions of some sort were included in past contracts. Thus, Merrick cannot now claim that it was unaware that the provisions on the reverse side of the purchase order were part of the contract.
 
 
 50
 Despite the fact that Merrick has failed to establish a material issue of fact as to which contract covers Thompson's injuries, summary judgment must be denied. As the district court noted, genuine issues of material fact remain as to whether Budd was grossly negligent or engaged in willful misconduct which led to Thompson's injuries. This issue must be remanded for further factual determinations.
 
 
 51
 b. Contractual Indemnity Claims against Barton
 
 
 52
 Article 25 of the contract between Budd and Barton contains the following indemnification clause:
 
 
 53
 With regard to the work to be performed hereunder by the contractor on the owner's premises, contractor agrees to and will indemnify and hold harmless owner from and against any claims, losses, or damages due to the death of or injury to the person or the property of any person, or persons, ... arising out of, or in connection with, contractor's performance hereunder, except as to any such loss or damage which is causedby the sole negligence, or wanton and willful misconduct of owner or owner's agents, servants or employees.
 
 
 54
 The first issue is whether such a clause includes attorney fees. In United States v. Hardy, 916 F. Supp. 1385 (W.D. Ky. 1996), the United States District Court for the Western District of Kentucky addressed a contract that provided indemnity for "any and all loss, damage, injury, liability, and any claim or claims therefor, including claims for injury or death to any and all persons or property." Id. at 1390. The court awarded attorney fees based on this contract, but two qualifications must be noted. First, liability had already attached. SeeHardy, 916 F. Supp. at 1388 (noting that indemnitee had already paid the United States for CERCLA liability). Second, the court noted that award of attorney fees was not automatic but based on equitable distinctions. See id.at 1391 n.5.
 
 
 55
 Applying Hardy, the language "against any claims, losses, or damages" encompasses more than legal liability (i.e., damages). It is not dispositive that Budd, unlike the indemnitee in Hardy, has not been held liable in the underlying claim. See Napier, 571 S.W.2d 644. In Napier, the court of appeals found indemnity proper although there had been no judicial determination of liability where the contract provided indemnification for "all 'liabilities, losses and expenses' incurred by the appellant, including all amounts paid by appellant 'in good faith under the belief that: (1) Surety was or might be liable therefore; (2) Such payments were necessary or advisable to protect any of Surety's right or to avoid or lessen Surety's liability or alleged liability.[']" Napier, 571 S.W.2d at 645. Considering Napier in conjunction with Hardy leads to the conclusion that the contract between Barton and Budd allows-but does not require--a court to award attorney fees despite the absence of liability unless Budd was defending claims that arise out of its "sole negligence, or wanton and willful misconduct."
 
 
 56
 Because Kentucky applies comparative negligence principles, Barton argues that by definition Thompson's claim was for Budd's sole negligence. Kentucky case law has not specifically interpreted the meaning of "loss or damage caused by the sole negligence, or wanton and willful misconduct" as an exception to an indemnification contract. Michigan courts, however, have construed a statute which bars indemnification for "damages arising out of bodily injury to persons ... caused by or resulting from the sole negligence of the promisee or indemnitee." Burdo v. Ford Motor Co., 828 F.2d 380, 382 (6th Cir. 1987). In construing that statute, Michigan courts found that such language bars indemnity only where "'the "bodily injury" as a whole, results from the sole negligence of the indemnitee.'" Id at 384 (citing Fischbach-Natkin v. Power Process Piping, 403 N.W.2d 569, 574 (Mich. Ct. App. 1987)). Thus, even where comparative negligence regimes exist, an indemnitee may recover under the indemnity agreement as long as it was not 100% responsible for the plaintiff's injuries. See generally Burdo, 828 F.2d 380; Paquin v. Harnischfeger Corp., 317 N.W.2d 279 (Mich. Ct. App. 1982). Although not binding, this interpretation is persuasive and imminently reasonable under Kentucky law.
 
 
 57
 Budd's attorney fee indemnity claims are remanded to the district court. The district court in its discretion may award Budd attorney fees based on its contract with Barton, unless the facts indicate that all of the injuries suffered by Thompson arose because of Budd's sole negligence, or wanton and willful misconduct.
 
 III. CONCLUSION
 
 58
 For the reasons discussed above, the district court's grant of summary judgment in favor of Budd against Thompson is AFFIRMED; the award of summary judgment in favor of Barton and Kahn regarding Budd's common law indemnityclaims is AFFIRMED; and the award of summary judgment in favor of Barton and Merrick regarding Budd's contractual indemnity claims is REVERSED as to Budd's claims for attorney fees. This case is remanded for proceedings consistent herewith.
 
 
 
 Notes:
 
 
 *
 The Honorable Thomas A. Wiseman, United States District Judge for the Middle District of Tennessee, sitting by designation.
 
 
 [1]
 Thompson attempts to raise a second issue: whether Budd has secured payment of compensation as the workers' compensation system requires. Budd has clearly met this requirement; the Department of Workers' Claims of Kentucky has certified that Budd has complied with the Workers' Compensation Act as a self-insurer.
 
 
 [2]
 Some courts have interpreted Kentucky common law to allow indemnity claims despite the failure to show legal liability. In Long v. Illinois Cent. Gulf R.R. Co., 660 F. Sup. 469 (W.D. Ky. 1986), the district court concluded that Kentucky law does not require an actual judgment to be rendered before a claim of indemnity can succeed. Id. at 472. Long addressed a claim of indemnity by a party who had settled with the injured worker. Although an actual judgment may not be required, the court did require "one seeking indemnity to show that his liability was certain, and that there was no impediment or defense to the claim against him." Id. at 472. Budd is certainly not asserting that its liability to Thompson is certain; thus, even this possible exception to the rule requiring liability to have attached does not apply. We will not extend this exception beyond the context in which it was announced: a case where a party has settled a claim and seeks indemnification for the cost of settlement. The Long court did note that if a claim for liability is brought against a party--e.g., Budd--such defendant may maintain an indemnity action in conjunction with the principal suit at least until the resolution of the underlying liability claim. If the defendant is found not liable, then the common law indemnity claims must be dismissed as well. See Long, 660 F. Supp. at 473-74.
 
 
 [3]
 The cases which the district court cited as requiring liability for both contractual and common law indemnity relate only to common law indemnification claims. See Long, 660 F. Supp. at 471 (stating that Kentucky recognizes common law indemnity); Harris Corp. v. Comair, Inc., 510 F. Supp. 1168, 1174 (E.D. Ky. 1981) (stating that plaintiff has no right to indemnity under common law principles); see also Crime Fighters Patrol, 740 S.W.2d at 938 (noting that both contractual and common law indemnity arise in this case, but that appellants did not contest the contractual indemnity in this case). The court also mentions Clark v. Hauck Mfg. Co., 910 S.W.2d 247, 253 (Ky. 1995). The opinion in Clark is unclear whether contractual or common law indemnity claims are involved.
 
 
 [4]
 Budd's brief quotes the contract as stating "and demand from and against." Although the copies of the agreement are not very clear, the agreement actually seems to provide "and demend [sic] from and against." It appears that an "m" was mistakenly used in the place of an "f." Additionally, "defend" simply makes more sense in this context than does "demand."
 
 
 [5]
 A review of the two purchase orders reveals very few differences. There are, however, some differences--even between the two copies of the second purchase order contained in the joint appendix. The parties, however, point to no substantive differences. Nonetheless, without further fact finding it is unclear whether the contracts are identical. If there are no substantive differences, then there is only one contract memorialized on two purchase orders. Merrick signed one recording of the contract and should not be able to point to a second unsigned copy to negate its prior acceptance.
 
 
 [6]
 Section 371.010(4) provides "No action shall be brought to charge any person ... [u]pon any promise to answer for the debt, default, or misdoing of another ... unless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged therewith, or by his authorized agent. It shall not be necessary to express the consideration in the writing, but it may be proved when necessary or disproved by parol or other evidence." Ky. Rev. Stat. Ann. § 371.010(4) (Banks-Baldwin 1997).
 
 
 [7]
 Section 342.690(1) provides in relevant part, "If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee.... The liability of an employer to another person who may be liable for or who has paid damages on account of injury or death of an employee of such employer arising out of and in the course of employment and caused by a breach of any duty or obligation owed by such employer to such other shall be limited to the amount of compensation and other benefits for which such employer is liable under this chapter on account of such injury or death, unless such other and the employer by written contract have agreed to share liability in a different manner." Ky. Rev. Stat. Ann. § 342.690(1) (Banks-Baldwin 1997).
 
 
 [8]
 Merrick makes no claims as to the incorporating language of the Bid Request or the Second Purchase Order. The equities of the situation, however, would demand the same result as to each alleged contract.