**Daniel DANIELS, Appellant,**

v.

**LOUISVILLE GAS AND ELECTRIC COMPANY, Appellees.**

**No. 95–CA–1164–MR.**

Court of Appeals of Kentucky.

June 14, 1996.

Discretionary Review Denied by Supreme Court Dec. 11, 1996.

Richard L. Masters, Louisville, Carter R. Dodge, Jane T. Seelie, Cleveland, OH, for Appellant.

Michael R. Engleman, Marsha Owens Howser, Louisville, for LG&E.

Wayne J. Carroll, Edward H. Bartenstein, Lee Ann Risner, Louisville, for TSA.

Before HOWERTON, KNOPF and WILHOIT, JJ.

HOWERTON, Judge.

Daniel Daniels appeals from an order of the Jefferson Circuit Court granting summary judgment in favor of Louisville Gas and Electric Company (LG&E). The circuit court determined that Daniels' claims were barred by the exclusive remedy provisions of the Kentucky Workers' Compensation Act. KRS 342.690. We agree and affirm.

Daniels was employed by Total Source Analysis, Inc. (TSA), which entered into a contract on April 1, 1993, with LG&E to conduct emissions testing of LG&E's coal-fired generators at LG&E's Cane Run Station, located in Louisville, Kentucky. The Environmental Protection Agency (EPA) requires operators of coal-fired plants to comply with EPA regulations regarding the make-up of gases discharged into the atmosphere as a result of burning coal to create steam. Compliance with those regulations is monitored through performance testing mandated by the EPA and codified at 40 CFR 60, subparts A, D, (or Da), and Appendix A. Over the years, LG&E claims to have undertaken emissions testing in either of two circumstances:

1) at the initial start-up of any pollution control equipment, or

2) upon completion of any major upgrade work to pollution control equipment.

Under the terms of the contract, LG&E was required to furnish certain items in connection with the work, including 110 volt, 20 amp electrical service to all test locations. On April 22, 1993, Daniels was working with other TSA employees to perform the contracted tests. In the course of securing the electrical service required to commence testing, Daniels attempted to connect an electrical line that would provide the necessary power. In the process, the line came into contact with LG&E's main power supply, causing Daniels to suffer severe burns of his left hand, loss of certain fingers, and burns to his face and the back of his right hand, resulting in permanent scarring.

On April 14, 1994, Daniels filed a complaint in the Jefferson Circuit Court alleging negligence on the part of LG&E and breach of contract regarding safety controls intended

to benefit Daniels. On November 14, 1994, Daniels amended the complaint to include an allegation concerning LG&E's failure to warn him of the risk of injury.

LG&E filed a motion for summary judgment on December 14, 1994, asserting immunity on the basis of the exclusive remedy provisions of the Kentucky Workers' Compensation Act. LG&E argued that it is a statutory employer under the definition contained in KRS 342.610, as emissions testing is a "regular or recurrent" part of its business. The circuit court granted LG&E's motion, dismissing Daniels' claims with prejudice. This appeal followed.

Daniels argues that the circuit court erred in granting summary judgment because a material factual issue existed as to whether emissions testing was a "regular or recurrent" part of LG&E's business. After review of the record and applicable case law, we must disagree. KRS 342.690 provides in part:

> (1) If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee, ... to recover damages from such employer at law or in admiralty on account of such injury or death. For purposes of this section, the term "employer" shall include a "contractor" covered by subsection (2) of KRS 342.610, whether or not the subcontractor has in fact, secured the payment of compensation.

In addition, KRS 342.610(2), which sets forth the liability of a contractor, further defines a "contractor" as:

> [a] person who contracts with another ... (b) to have work performed of a kind which is a *regular or recurrent* part of the work of the trade, business, occupation or profession of such person, shall for the purposes of this section be deemed a contractor, and such other person a subcontractor. (Emphasis added.)

The statute makes it clear that if LG&E is a contractor or statutory employer, it has no liability in tort to an injured employee of its subcontractor, TSA. LG&E would be liable for workers' compensation in the event TSA failed to provide it. It is also apparent from the statute that LG&E is a contractor if the work subcontracted to TSA is of a kind which is a "regular or recurrent" part of the work or trade of LG&E. *See also Fireman's Fund Ins. Co. v. Sherman & Fletcher,* Ky., 705 S.W.2d 459 (1986).

In support of its contention that emissions testing is a regular or recurrent part of its business, LG&E submitted an affidavit of Mark Schmitt, Manager, Engineering for LG&E's Cane Run Station. Schmitt stated that emissions testing at Cane Run had been conducted on several occasions, including but not limited to "August 1966, November 1969, March 1970, August and September 1985, June and September 1986, April and May 1987, March and September 1991, April 1993 and January and February 1994 in accordance with the pollution control equipment installation and upgrades." The uncontested facts are that when testing was required, testing was performed, and the testing was performed by contracted experts rather than LG&E hiring and retaining its own employees to complete these periodic tasks.

Daniels contends that the sporadic nature of the prior emission tests is evidence that it is not a regular or recurrent part of LG&E's business. Further, Daniels relies on two unpublished Sixth Circuit decisions in an effort to demonstrate that the "regular or recurrent" requirement of KRS 342.610 is not broad enough to encompass the work which TSA contracted to perform for LG&E. These cases are listed in a Table of Cases in the respective volumes of the Federal Reporter, but Daniels supplied the texts in the appendix to his brief. The two cases are styled: *Morlan v. Green River Steel Corp.,* 35 F.3d 566 (1994); *Comperry v. Phelps Dodge Industries, Inc.,* 928 F.2d 1132 (1991). We find both distinguishable from the present case. Although we have failed to find any decision which specifically defines "regular or recurrent", we are of the opinion that Daniels' interpretation is too narrow to be reasonable or logical.

The EPA requires LG&E to conduct various emissions tests on all coal-fired electric generating stations at the initial start-up of

any pollution control equipment and upon completion of any major upgrade work to pollution control equipment. LG&E's affidavit details the dates on which testing was conducted in response to the occurrence of one of the two enumerated circumstances. Although the testing may not be regular in the sense that it is not a task which is performed frequently, we conclude that it nevertheless is a regular or certainly a recurrent part of LG&E's business and, in fact, mandated by the EPA whenever LG&E installs or upgrades its pollution control equipment.

For the first time at any stage of this case, Daniels in his reply brief cites *Goldsmith v. Allied Bldg. Components, Inc.*, Ky., 833 S.W.2d 378 (1992). The case is similar only in the sense that it involved a summary judgment, KRS 342.690 and 542.610(2). The case was remanded for a factual determination of whether certain rough carpentry work was a regular or recurrent part of Allied Building Components' business. There were disputed facts, and summary judgment was improper. CR 56 and *Steelvest, Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476 (1991).

We find *Goldsmith* distinguishable and nondispositive. Here, we do not have a factual controversy. Our question is whether the trial court correctly ruled as a matter of law that the testing was a regular or recurring part of LG&E's business. The court so held, and we agree.

It is clear that LG&E has been required to perform the testing in the past, it will be so required in the future, and it contracts with specialists to perform the services. "Recurrent" simply means occurring again or repeatedly. "Regular" generally means customary or normal, or happening at fixed intervals. However, neither term requires regularity or recurrence with the preciseness of a clock or calendar. LG&E simply tested when and as required. Therefore, LG&E must be considered within the statutory definition of a "contractor" and relieved from tort liability in accordance with KRS 342.690. *Fireman's Fund Ins., supra.* There was no material issue of fact and LG&E was entitled to judgment as a matter of law, as correctly determined by the trial judge. CR 56.

The order of the Jefferson Circuit Court granting summary judgment is therefore affirmed.

WILHOIT, J., concurs.

KNOPF, J., dissents by separate opinion.

KNOPF, Judge, dissenting:

Respectfully I dissent from the majority opinion. The issue in this case, as stated by both parties as well as the majority opinion, is whether the emissions testing performed by TSA was a "regular or recurrent" part of LG&E's business. The basic facts are not disputed. However, the weight to be given to certain facts, the inferences to be drawn from the proven facts, the inferences to be drawn from facts not proven, and the conclusions that should be reached are hotly contested. The majority believes that these inferences and conclusions can be decided as a matter of law in a motion for summary judgment. I disagree.

In *Elkhorn Coal Co. v. Adams*, Ky., 313 S.W.2d 421 (1958), the issue was whether the claimant in a workmen's compensation case was an employee of the coal company or an independent contractor. The coal company, the appellant, argued that the question of whether the claimant was an employee was a question of fact. The Court agreed. After recognizing that the facts were not in dispute, the Court held:

A decision on this question involves the weighing of the facts shown and drawing a reasonable inference therefrom. [Cite omitted].

"The drawing of inferences from other facts in the record is a function of the board and the weight to be given to those facts is for the board to determine."

Like jury determinations, inferences and conclusions to be drawn from proven basic facts are questions of fact. [Cites omitted]. [Emphasis added].

*Id.* at 423.

In another worker's compensation case the Court held that the inferences to be drawn

from established facts was to be decided by a fact finder. The Court in *Jackson v. General Refractories Co.,* Ky., 581 S.W.2d 10, 11 (1979), stated, "[w]hen one of two reasonable inferences may be drawn from the evidence, the finders of fact may choose."

Because inferences and conclusions from proven facts remain questions of fact, I believe that *Goldsmith v. Allied Building Components,* Ky., 833 S.W.2d 378 (1992), clearly applies to this case, contrary to the majority's holding that it is distinguishable and nondispositive. In *Goldsmith,* the Court held "[t]o have benefit of the immunity provision of the Act, Components must also demonstrate to the satisfaction of the trier of fact that providing rough carpentry labor was a regular or recurrent part of its business." *Id.* at 381. I believe that *Goldsmith* holds that when a defendant raises this affirmative defense, a jury should determine what constitutes "regular or recurrent part of its business."

In this case the weight to be given to the fact that emission testing was required by the EPA, the weight to be given to the frequency of the testing and the amount of control that LG&E had over the testing, and the inferences to be drawn from all of the evidence are decisions for the fact finder. These decisions are not appropriate for a judge to determine as a matter of law in a motion for summary judgment. Consequently, I would reverse the summary judgment.

Furthermore, to prevent the "twin devils" of costs and delay, as suggested in the *Goldsmith* dissent, on remand of this case the trial should be bifurcated. First, the question of whether the emission testing was a regular or recurrent part of LG&E's business should be decided by the jury. If the jury decides that it was regular or recurrent, then the lawsuit should be dismissed. If, on the other hand, the jury decides that the testing was not regular or recurrent, then the trial should proceed on the plaintiff's tort claims of negligence.