Michael **PENNINGTON**, Appellant,

v.

**JENKINS–ESSEX CONSTRUCTION, INC., Appellee.**

No. 2005–CA–001652–MR.

Court of Appeals of Kentucky.

Nov. 3, 2006.

Discretionary Review Denied by Supreme Court Dec. 12, 2007.

---

8. *See* KRS 131.081(14).

9. BLACK'S LAW DICTIONARY 1422 (7th Ed.1999).

10. CR 15.03(1).

11. *Id.*

Kenneth L. Sales, Louisville, KY, for appellant.

Mark A. Osbourn, Louisville, KY, for appellee.

Before COMBS, Chief Judge; BUCKINGHAM,[1] Senior Judge; MILLER,[2] Special Judge.

## OPINION

BUCKINGHAM, Senior Judge.

Michael Pennington appeals from a summary judgment of the Hardin Circuit Court in favor of Jenkins–Essex Construction, Inc., on his negligence claim arising out of injuries he suffered in a fall at the MeadWestVaco plant in Elizabethtown, Kentucky. The issue is whether Jenkins–Essex has an up-the-ladder immunity defense from tort liability based on the exclusivity provision in the Kentucky Workers' Compensation Act. Based on the facts of this case, this is apparently an issue of first impression before this court. For reasons set forth below, we affirm.

Jenkins–Essex is a general construction company that is in the business of designing, constructing, and retrofitting commercial and industrial buildings, such

---

1. Senior Judge David C. Buckingham sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

2. Retired Judge John D. Miller, sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution.

as warehouses and manufacturing facilities. Jenkins–Essex was hired by Mead-WestVaco to retrofit MeadWestVaco's manufacturing plant in Elizabethtown, Kentucky. Jenkins–Essex often hires subcontractors, including painting companies, to work on its projects.

In connection with the MeadWestVaco job, Jenkins–Essex subcontracted with Charles F. Mann Painting Company for painting services. Mann Painting employed Pennington as a painter, and Pennington worked on the MeadWestVaco job. The contract between Jenkins–Essex and Mann Painting required Mann Painting to obtain workers' compensation insurance for its employees and to maintain a certificate of insurance on file with a 30–day cancellation notice to Jenkins–Essex during the term of the subcontract.

On April 24, 2003, Pennington was using a motorized, elevated platform to paint the ceiling of the MeadWestVaco plant. At the time of the accident, the platform was extended to a height of approximately 20 feet. Pennington and his co-workers would move the motorized platform from one area to another as they worked. To save time, they would often move the platform without lowering it.

While the platform was being moved, its front wheels dropped into one of several large holes dug by Jenkins–Essex in the floor, causing the platform to tip and Pennington to fall to the floor and suffer injuries. His injuries included a dislocated shoulder, multiple fractures of the ankle and elbow, and compression of the vertebrae in his lower back.

Mann Painting had workers' compensation insurance, and its insurance carrier paid workers' compensation benefits to Pennington. Pennington subsequently brought a civil tort action in the Hardin Circuit Court against Jenkins–Essex and MeadWestVaco. He alleged that Jenkins–Essex was negligent in that it failed to provide a safe workplace, including failure to provide signals, warning signs, barricades, and floor opening covers.[3]

Jenkins–Essex filed a motion for partial summary judgment, arguing that it had an up-the-ladder immunity defense to Pennington's claim because it was a "contractor" as defined in the Kentucky's Workers' Compensation Act and that, based on KRS[4] 342.610 and KRS 342.690, Pennington's claim was barred by the exclusivity remedy provision of the Act. The circuit court agreed and granted the motion. This appeal by Pennington followed.

KRS 342.610(2) provides in part as follows:

A contractor who subcontracts all or any part of a contract and his carrier shall be liable for the payment of compensation to the employees of the subcontractor unless the subcontractor primarily liable for the payment of such compensation has secured the payment of compensation as provided for in this chapter. Any contractor or his carrier who shall become liable for such compensation may recover the amount of such compensation paid and necessary expenses from the subcontractor primarily liable therefor. A person who contracts with another:

3. The holes in the foundation were a part of the construction project. They measured four feet by four feet by one foot deep. They were dug for the future placement of machinery. It was Jenkins–Essex's policy to have the holes covered by steel plates and guarded by standard railings. On the day of the accident, however, steel plates covered only a few of the holes, and none was set off by railings. Instead, the openings had lengths of two-by-four set around them and were set off by yellow caution tape.

4. Kentucky Revised Statutes.

(a) To have work performed consisting of the removal, excavation, or drilling of soil, rock, or mineral, or the cutting or removal of timber from land; or

(b) To have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person

shall for the purposes of this section be deemed a contractor, and such other person a subcontractor. This subsection shall not apply to the owner or lessee of land principally used for agriculture.

KRS 342.690 provides in part as follows:

(1) If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death. For purposes of this section, the term "employer" shall include a "contractor" covered by subsection (2) of KRS 342.610, whether or not the subcontractor has in fact, secured the payment of compensation....

(2) If an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may claim compensation under this chapter and in addition may maintain an action at law or in admiralty for damages on account of such injury or death, provided that the amount of compensation shall be credited against the amount received in such action, and provided that, if the amount of compensation is larger than the amount of damages received, the amount of damages received less the employee's legal fees and expenses shall be credited against the amount of compensation....

In granting partial summary judgment to Jenkins–Essex, the circuit court first stated that "when a direct employer/subcontractor fails to provide workers' compensation insurance coverage, that employer is not immune from tort liability." The court then held that "when that first level of coverage has in fact been provided, an 'up-the-ladder' contractor/employer is not liable in tort." To support its holding, the circuit court cited *United States Fidelity & Guaranty Co. v. Technical Minerals, Inc.*, 934 S.W.2d 266 (Ky.1996).

One of the purposes of the Workers' Compensation Act is to "discourage owners and contractors from hiring fiscally irresponsible subcontractors and thus eliminate workers' compensation liability." *Matthews v. G & B Trucking, Inc.*, 987 S.W.2d 328, 330 (Ky.App.1998). The Act "accomplishes this purpose by imposing liability upon the 'up-the-ladder' contractor for compensation to the employees of a subcontractor unless the subcontractor has provided for the payment." *Id.See also* KRS 342.610(2). As a result, an entity "up-the-ladder" from the injured employee that meets all the requirements of KRS 342.610(2) is entitled to immunity under KRS 342.690 and has no liability to the injured employee of the subcontractor. See *Fireman's Fund Ins. Co. v. Sherman & Fletcher*, 705 S.W.2d 459, 462 (Ky.1986), where the court held that the "potential liability for workers' compensation benefits relieves [the 'up-the-ladder' entity] from tort liability." *Id.*

■ Pennington correctly notes that immunity pursuant to the exclusivity provision of the Workers' Compensation Act is

an affirmative defense that must be established by the claimant (Jenkins–Essex). *See Gordon v. NKC Hosps., Inc.,* 887 S.W.2d 360, 362 (Ky.1994). Pennington argues that Jenkins–Essex failed to meet its burden and that the court erred in determining that it had done so. Pennington also raises a public policy/constitutional challenge to the relevant portion of the Act.

Pennington's first argument is that the court erred in finding as a matter of law that Jenkins–Essex met the definition of "contractor" as set out in KRS 342.610. The relevant portion of the statute states that "[a] person who contracts with another ... (b) To have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person ... shall for the purposes of this section be deemed a contractor[.]" KRS 342.610(2).

Pennington maintains that the court erred in concluding that painting was a regular or recurrent part of the work of Jenkins–Essex's trade, business, occupation, or profession. He asserts that this was a fact issue for the jury. To support his argument, Pennington points to the fact that Jenkins–Essex was a general construction company that did not employ painters but only subcontracted painting when needed.

Jenkins–Essex admits that it is not a painting company and that it does not employ painters. It also admits that it subcontracts painting as needed. However, Don Russell Taylor, Executive Vice President for Jenkins–Essex, testified that painting was required on pretty much every building they did. Likewise, Mike Nall, a project superintendent for Jenkins–Essex, testified that Jenkins–Essex subcontracted painters on 90–95% of its jobs. Jenkins–Essex argues that these uncontested facts support the court's conclusion

that it qualified as a "contractor" as defined in KRS 342.610.

In the *Fireman's Fund* case, the Kentucky Supreme Court was faced with the argument that Sherman & Fletcher (the contractor) always relied on subcontractors for rough framing and that, therefore, it did not meet the definition of "contractor." The court concluded that whether the contractor had employees perform work that was a regular or recurrent part of its trade or business or whether the contractor hired subcontractors to do such work was a distinction of "no significance." *Id.* at 461. The court further stated that "[e]ven though he may never perform that particular job with his own employees, he is still a contractor if the job is one that is usually a regular or recurrent part of his trade or occupation." *Id.* at 462. *See also Technical Minerals,* 934 S.W.2d at 269. In short, Pennington's argument that Jenkins–Essex did not qualify as a contractor because it did not directly employ painters is without merit.

■ We are left to determine whether the evidence supports the conclusion that painting is a regular or recurrent part of Jenkins–Essex's trade, business, occupation, or profession. This court addressed the issue of "regular or recurrent" in *Daniels v. Louisville Gas & Elec. Co.,* 933 S.W.2d 821 (Ky.App.1996). Therein, we concluded as follows:

> "Recurrent" simply means occurring again or repeatedly. "Regular" generally means customary or normal, or happening at fixed intervals. However, neither term requires regularity or recurrence with the preciseness of a clock or calendar.

*Id.* at 824.

The uncontested facts in this case are that Jenkins–Essex uses painters on pretty much every job and that painting is a

part of 90–95% of its projects. We conclude that the circuit court did not err when it concluded that Jenkins–Essex was a "contractor" as defined in KRS 342.610(2). There was no genuine issue of material fact in this regard. *See* CR[5] 56.03.

■ Pennington's second argument is that the circuit court erred when it determined that Jenkins–Essex could have no tort liability because Mann Painting had provided workers' compensation insurance that covered him. Pennington reasons that the statutes require that even those entities up-the-ladder must provide workers' compensation insurance coverage in order to be protected from tort liability. He cites KRS 342.690(1) to support his argument.

KRS 342.690(1) provides in part as follows:

If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee.... For purposes of this section, the term "employer" shall include a "contractor" covered by subsection (2) of KRS 342.610, *whether or not the subcontractor has in fact, secured payment of compensation.* (Emphasis added.)

KRS 342.690(2) provides in part as follows:

If an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may claim compensation under this chapter and in addition may maintain an action at law or in admiralty for damages on account of such injury or death, provided that the amount of compensation shall be credited against the amount received in such action, and provided that, if the amount of compensation is larger than the amount of damages received, the amount of damages less the employee's legal fees and expenses shall be credited against the amount of compensation.

Jenkins–Essex responds to this argument in two ways. First, it states that it did have workers' compensation insurance. Second, it asserts that it is nevertheless protected from tort liability because Mann Painting provided Pennington with coverage. As for the first argument, we conclude that Jenkins–Essex did not demonstrate that it had workers' compensation insurance to cover Pennington. There may be a fact issue in this regard. Regardless, we agree with Jenkins–Essex's second argument, that it is protected from tort liability because Mann Painting provided coverage for Pennington.

We have not been cited to any Kentucky case with similar facts that directly decides this issue. The circuit court here relied on the *Technical Minerals* case. However, the court therein never mentioned whether the contractor had secured coverage for the injured employee.

Pennington relies on the *Gordon* case and on *Becht v. Owens Corning Fiberglas Corp.,* 196 F.3d 650 (6th Cir.1999). We are not persuaded by either case. In *Gordon,* the case was decided on the basis that the employer had failed to plead an affirmative defense. In *Becht,* the employer who was required to have coverage was the employee's immediate employer, not an up-the-ladder contractor.

Several Kentucky cases have addressed the issue of tort liability of an up-the-ladder contractor, although none have

---

**5.** Kentucky Rules of Civil Procedure.

identical facts to those herein. In several cases, injured employees recovered workers' compensation benefits from their employer and then filed a civil tort action against an up-the-ladder contractor. In each case, the court held that the up-the-ladder contractor had immunity from tort liability.

In *Daniels v. Louisville Gas & Elec. Co.*, 933 S.W.2d 821 (Ky.App.1996), this court held that LG & E had no liability in tort for the injuries of a subcontractor's employee based on the clear language of the statute. *Id.* at 823. In *Sharp v. Ford Motor Co.*, 66 F.Supp.2d 867 (W.D.Ky. 1998), the court described the up-the-ladder defense as one "in which an entity 'up the ladder' from the injured employee and who meets all the requirements of a contractor under KRS 342.610(2) is entitled to the immunity provided by KRS 342.690." *Id.* at 869.

In a similar fact situation, the Kentucky Supreme Court in the *Fireman's Fund* case stated that "potential liability for worker's compensation benefits" relieved the up-the-ladder contractor from liability. *Id.* at 462. In *Thompson v. The Budd Co.*, 199 F.3d 799 (6th Cir.1999), the court held that "Kentucky law, thus, makes clear that if Budd is a contractor then it has no liability in tort to Thompson, an employee who has received compensation through Budd's subcontractor." *Id.* at 804. In *Granus v. North Am. Philips Lighting Corp.*, 821 F.2d 1253 (6th Cir.1987), the court, in a similar fact situation, quoted the *Fireman's Fund* case and stated "(t)hat potential liability for workers' compensation benefits relieves [the defendant] from tort liability." *Granus*, 821 F.2d at 1258, *quoting Fireman's Fund*, 705 S.W.2d at 462.

In yet another fact situation where an injured employee sought to recover both workers' compensation benefits from his employer and damages in tort from an up-the-ladder contractor, the court in *Smothers v. Tractor Supply Co.*, 104 F.Supp.2d 715 (W.D.Ky.2000), held that "(u)nder Kentucky law, if Tractor Supply is a contractor, it has no liability in tort to Smothers, an employee who has received compensation through Tractor Supply's subcontractor." *Id.* at 717.

The aforementioned cases, beginning with *Fireman's Fund*, make it clear that if a party is a "contractor" within the definition of KRS 342.610, it has no liability in tort to an injured employee of a subcontractor who provided workers' compensation benefits to the employee. The cases emphasize that it is the potential liability for workers' compensation benefits that relieves the contractor of tort liability. In addition, nearly all the cases cite to the language of KRS 342.690. In short, we conclude that an up-the-ladder contractor is immune from tort liability to an injured employee of a subcontractor if it proves that the immediate employer of the injured employee had secured coverage for the employee.

Pennington's last argument is that the circuit court's judgment should be reversed on public policy and constitutional grounds. As this argument is being raised for the first time on appeal, we are without authority to address it. See *Regional Jail Auth. v. Tackett*, 770 S.W.2d 225, 228 (Ky. 1989).

The judgment of the Hardin Circuit Court is affirmed.

ALL CONCUR.