**Andrew FORBES and Betty June Forbes, Appellants,**

v.

**DIXON ELECTRIC, INC., Appellee.**

**No. 2009–CA–000834–MR.**

Court of Appeals of Kentucky.

April 30, 2010.

Discretionary Review Denied by Supreme Court March 16, 2011.

Charles C. Adams, Jr., Herren & Adams, Lexington, KY, for appellants.

Daniel E. Murner, Elizabeth Winchell, Landrum & Shouse LLP, Lexington, KY, for appellee.

Before CLAYTON and NICKELL, Judges; KNOPF,[1] Senior Judge.

---

1. Senior Judge William L. Knopf sitting as Special Judge by assignment of the Chief Jus-    tice pursuant to Section 110(5)(b) of the Ken-

*OPINION*

KNOPF, Senior Judge:

Andrew and Betty June Forbes have appealed from a summary judgment of the Fayette Circuit Court in favor of Dixon Electric, Inc. The circuit court held that Dixon Electric was entitled to up-the-ladder immunity afforded by KRS 342.610 of Kentucky's Workers' Compensation Act. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Dixon Electric is a corporation based in Lexington, Kentucky, that is involved in the business of designing and installing commercial electrical systems. The company has an exclusive contract with Lexington–Fayette Urban County Government to provide for the installation of and repairs to traffic signals. Pursuant to that contract, Dixon Electric was to provide for any traffic control needed. In the event that it needed assistance with traffic control, due to a busy intersection for example, Dixon Electric would request the assistance of the Lexington Police Department. While there was no set number of times assistance was needed, Dixon Electric foreman Greg Tuttle testified by deposition that he would request flagging assistance several times per month.

On the evening of September 21, 2005, Dixon Electric was replacing wood poles with steel poles at the intersection of New Circle Road and North Broadway, a busy intersection in Lexington. In order to complete a job such as this, Dixon Electric employees would cut traffic signal wires and then reattach them to the new poles. Because this was a busy intersection, Dixon Electric requested assistance from the police department, and Officers Andrew Forbes (the appellant herein) and Ron

tucky Constitution and Kentucky Revised

Keaton were assigned to provide manual traffic control. During this procedure on the night in question, Stephen Hill was driving his vehicle westbound on New Circle Road, failed to stop behind a car already stopped at the intersection, and swerved to miss that car. Hill's vehicle hit Forbes, causing him to fly through the air and incur substantial injuries. Forbes sought and received workers' compensation benefits through the police department for medical expenses and costs to modify his home.

As a result of the accident, Forbes and his wife filed a civil suit against Hill in Fayette Circuit Court, seeking compensatory and punitive damages. The Forbeses later sought and received leave to file an amended complaint to name Dixon Electric as a defendant, alleging that Dixon Electric was negligent in failing to provide notice and warning to oncoming traffic of the non-working traffic signals at the intersection. Discovery began, and six months later, Dixon Electric filed a motion for summary judgment arguing that it was entitled to up-the-ladder immunity. In support of its motion, Dixon Electric argued that traffic control is a crucial part of its work for the LFUCG, and accordingly it was Forbes's statutory employer at the time of the accident and entitled to immunity. After the circuit court permitted additional discovery on the issue, Dixon Electric renoticed its motion for summary judgment. The Forbeses responded, asserting that Dixon Electric was not entitled to immunity.

After initially denying the motion, the circuit court later granted summary judgment in an opinion and order entered July 19, 2007. The circuit court found that traffic control, whether performed by Dixon Electric employees or by police officers,

Statutes (KRS) 21.580.

was a regular and recurrent part of Dixon Electric's work as the exclusive traffic signal installer and repair provider for LFUCG. Thus, Dixon Electric was a "contractor" and entitled to up-the-ladder immunity.

The Forbeses later moved the circuit court to reconsider its ruling in light of the Supreme Court of Kentucky's recent decision of *General Electric Co. v. Cain*, 236 S.W.3d 579 (Ky.2007), which was released a month after the opinion and order was entered. They argued that *Cain* created a new test to determine whether up-the-ladder immunity applied.

The circuit court opted to reconsider the prior ruling in an order entered June 10, 2008. It first noted the undisputed facts related to the issue of up-the-ladder immunity:

> It is undisputed that Dixon Electric had a written Contract with LFUCG to perform repair and maintenance work on traffic control devices in Lexington. As part of that Contract, it was the obligation of Dixon Electric, at no cost to LFUCG, to maintain traffic control at any intersections at which Dixon is performing work under the Contract. Pursuant to that contractual obligation, it is undisputed that from time to time Dixon would employ police officers from the LFUCG Division of Police to direct traffic at intersections which, in the discretion of the Dixon employee, required such direction. It is equally undisputed that from time to time Dixon employees would direct traffic at intersections not requiring direct law enforcement activity.

The circuit court then addressed the holding in *Cain*, as well as the cases cited by the Supreme Court supporting its decision. After thoroughly analyzing those cases, the circuit court determined that *Cain* did not alter the law as set forth in prior opinions. It held that traffic control was a "regular" or "recurrent" part of Dixon Electric's contractual obligations to LFUCG, bringing it within the ambit of the holdings in *Cain* and *Daniels v. Louisville Gas & Electric Co.*, 933 S.W.2d 821 (Ky.App.1996).

The circuit court disagreed with the Forbeses' argument that traffic control at major intersections could not be considered regular or recurrent work of Dixon Electric because its employees could not legally direct traffic, stating that "[e]ven if the Dixon employees could not have directed traffic on the evening in question, traffic control was still a regular or recurrent part of its contractual obligation with LFUCG." Citing the holding in *Daniels* by way of analogy, the circuit court stated:

> *Daniels* would teach us that it is the obligation, whether contractual or as a matter of law, that is the issue to see if an owner or party can be deemed to be a contractor. The expertise or unique qualifications of the sub-contractor is not the ultimate criteria. If a uniquely qualified emissions testing company (and its employees) are performing work for a company with a contractual obligation to perform said testing, and the original company is not qualified to do the emissions testing, *Daniels* holds that the original company is still deemed to be a contractor, and the emissions testing company is deemed to be a sub-contractor, then the same analogy applies in the case at bar.

Turning to Dixon Electric, the circuit court went on to hold as follows: "Even assuming … that only police officers could conduct traffic control at busy intersections with the traffic signals inoperable, because traffic control was a contractual obligation of Dixon Electric with LFUCG, said traffic control was a 'regular' or 'recurrent' part of Dixon's work for LFUCG." Therefore,

the circuit court held that Dixon Electric was entitled to up-the-ladder immunity. This appeal followed.[2]

On appeal, the Forbeses raise four arguments: 1) that Dixon Electric is not entitled to up-the-ladder immunity pursuant to *Cain;* 2) that Dixon Electric did not plead protection under the Workers' Compensation Act and therefore waived application of the Act; 3) that Dixon Electric did not meet its burden of proving that it had workers' compensation insurance in place to cover Forbes; and 4) that KRS 342.160 violates public policy and is unconstitutional. In its brief, Dixon Electric disputes each of the Forbeses arguments.

## STANDARD OF REVIEW

The standard of review for a summary judgment is well-settled in the Commonwealth:

> The standard of review on appeal when a trial court grants a motion for summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." The trial court must view the evidence in the light most favorable to the nonmoving party, and summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor.... Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo.*

*Lewis v. B & R Corp.,* 56 S.W.3d 432, 436 (Ky.App.2001) (citations omitted). We agree with the circuit court that no disputed issues of material fact exist with respect to the issues before the Court. Therefore, we shall review the circuit court's legal decision *de novo.*

## ANALYSIS

██ We shall first address the Forbeses' up-the-ladder immunity argument. We begin with the identification of the statutes relevant to our analysis of this issue.

KRS 342.610(1) provides that "[e]very employer subject to this chapter shall be liable for compensation for injury, occupational disease, or death without regard to fault as a cause of the injury, occupational disease, or death." KRS 342.690(1) details the exclusive remedy protection afforded to employers subject to the Act and provides in relevant part as follows:

> If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death. For purposes of this section, the term "employer" shall include a "contractor" covered by subsection (2) of KRS 342.610, whether or not the subcontractor has in fact, secured the payment of compensation.

**2.** Neither the July 19, 2007, opinion and order nor the June 10, 2008, order was made final and appealable at the time of entry. On April 16, 2009, the circuit court entered an agreed order of partial dismissal when the Forbeses settled their claims against Hill. In an order entered April 24, 2009, the circuit court made the summary judgment final and appealable as of April 16, 2009, the date the partial dismissal was entered. The Forbeses timely filed their notice of appeal on May 1, 2009.

Finally, KRS 342.610(2) provides in relevant part:

A contractor who subcontracts all or any part of a contract and his carrier shall be liable for the payment of compensation to the employees of the subcontractor unless the subcontractor primarily liable for the payment of such compensation has secured the payment of compensation as provided for in this chapter. Any contractor or his carrier who shall become liable for such compensation may recover the amount of such compensation paid and necessary expenses from the subcontractor primarily liable therefor. A person who contracts with another:

. . .

(b) To have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person shall for the purposes of this section be deemed a contractor, and such other person a subcontractor.

The Supreme Court of Kentucky has recently revisited the issue of up-the-ladder immunity in *General Electric Co. v. Cain, supra.* The Court first briefly explained up-the-ladder immunity in the context of workers' compensation and tort liability:

If premises owners are "contractors" as defined in KRS 342.610(2)(b), they are deemed to be the statutory, or "up-the-ladder," employers of individuals who are injured while working on their premises and are liable for workers' compensation benefits unless the individuals' immediate employers of the workers have provided workers' compensation coverage. If deemed to be "contractors," the owners, like any other employers, are immune from tort liability [exclusive remedy immunity] with respect to work-related injuries whether or not the immediate employer actually provided workers' compensation coverage. *See* Thomas M. Cooper, *The "Comp" Factor in Tort Cases,* 51 Ky. Bench & Bar, No. 1, Winter 1987, at 14, 37. Thus, whether an owner is entitled to "exclusive remedy" immunity depends upon whether the worker was injured while performing work that was "of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession" of the owner. If so, the owner is immune; if not, the owner is subject to tort liability.

*Cain,* 236 S.W.3d at 585.

The Court then extensively reviewed existing state and federal case law interpreting KRS 342.610(2)(b) as well as *Larson's Workers' Compensation Law.* It concluded as follows:

Work of a kind that is a "regular or recurrent part of the work of the trade, business, occupation, or profession" of an owner does not mean work that is beneficial or incidental to the owner's business or that is necessary to enable the owner to continue in business, improve or expand its business, or remain or become more competitive in the market. *Larson's, supra,* at § 70.06[10]. It is work that is customary, usual, or normal to the particular business (including work assumed by contract or required by law) or work that the business repeats with some degree of regularity, and it is of a kind that the business or similar businesses would normally perform or be expected to perform with employees.

The test is relative, not absolute. Factors relevant to the "work of the . . . business," include its nature, size, and scope as well as whether it is equipped with the skilled manpower and tools to handle the task the independent contractor is hired to perform. *Larson's,*

*supra,* at § 70.06[5]. Employees of contractors hired to perform major or specialized demolition, construction, or renovation projects generally are not a premises owner's statutory employees unless the owner or the owners of similar businesses would normally expect or be expected to handle such projects with employees. Employees of contractors hired to perform routine repairs or maintenance that the owner or owners of similar businesses would normally be expected to handle with employees generally are viewed as being statutory employees. Whether a project is customized to the premises owner's needs is irrelevant.

*Id.* at 588.

Finally, the Court distilled its ultimate holding: "Stated simply, KRS 342.610(2)(b) refers to work that is customary, usual, normal, or performed repeatedly and that the business or a similar business would perform or be expected to perform with employees." *Id.* at 589.

The Forbeses assert that in *Cain,* the Supreme Court created a two-part test; namely, the work must be: 1) customary to the business or repeated with a degree of regularity; and 2) of a kind normally performed or expected to be performed by employees. We do not believe that the Supreme Court created a new test, but rather it summarized the existing test. Furthermore, we agree with Dixon Electric that the facts of this case fall squarely within the application of *Cain* and KRS 342.610. By virtue of its contract with LFUCG to install and repair traffic signals throughout the city, Dixon Electric had to provide for traffic control, which was done either by its employees or by Lexington police officers. Traffic control is unquestionably a regular and recurrent part of Dixon Electric's business. Therefore, Dixon Electric took on the role of contractor while the Lexington Police Department took on the role of sub-contractor at the time and place of the accident, and Dixon Electric was entitled to up-the-ladder immunity. The circuit court did not commit any error in so holding.

The Forbeses remaining three arguments are also without merit, and we shall only briefly address them. Dixon Electric's failure to plead protection under the Workers' Compensation Act in its answer to the complaint was remedied by the extension of the discovery period so that the parties could take depositions related to the issue, giving the Forbeses sufficient opportunity to obtain discovery on this defense. As to the Forbeses' argument concerning proof of workers' compensation coverage, we are persuaded by Dixon Electric's response that there is no merit to this issue. The record reflects that Officer Forbes received workers' compensation benefits from the police department, and Dixon Electric was required to have workers' compensation coverage in order to be awarded the LFUCG contract. Finally, the Supreme Court addressed and again upheld the constitutionality of KRS 342.610 in *Cain. See Cain,* 236 S.W.3d at 605–07.

For the foregoing reasons, the summary judgment of the Fayette Circuit Court is affirmed.

ALL CONCUR.