Deena REICHWEIN; Deena Reichwein, as Administratrix of the Estate of Andrew Reichwein; and Deena Reichwein, Next Friend and Guardian of Alexis Reichwein, Appellants

v.

JACKSON PURCHASE ENERGY CORPORATION, Appellee.

No. 2011–CA–001339–MR.

Court of Appeals of Kentucky.

Sept. 21, 2012.

Discretionary Review Denied by Supreme Court May 15, 2013.

Christopher H. Morris (argued), Louis-ville, KY, for appellants.

Park L. Priest and Samantha L. Propp (argued), Bowling Green, KY, Melissa D. Yates, Paducah, KY, for appellee.

Before DIXON, MOORE and THOMPSON, Judges.

### OPINION

THOMPSON, Judge:

Deena Reichwein, individually, as Administratrix of the Estate of Andrew Reichwein, and next friend and guardian, of Alexis Reichwein, (collectively referred to as the Estate) filed this tort action against Jackson Purchase Energy Corporation (JPEC). The McCracken Circuit Court granted two summary judgments in JPEC's favor and the estate appealed. The dispositive issue is whether JPEC is entitled to "up-the-ladder" immunity provided for in Kentucky Revised Statutes (KRS) 342.690(1) and KRS 342.610(2).

JPEC, a rural electric cooperative, serves several western Kentucky counties. Connexus Energy Corporation is a Minnesota electrical cooperative. In 2000, Connexus and JPEC each signed "mutual aid agreements" stating that, when requested, each cooperative would render assistance to other participating electrical cooperatives in maintaining their power systems. Pursuant to the agreement, after rendering assistance, the aiding company would submit an invoice of all charges incurred to be paid by the requesting company.

In early 2009, an ice storm occurred in western Kentucky causing widespread power outages. The Federal Emergency Management Agency (FEMA) and the Kentucky Division of Emergency Management issued a federal emergency declara-

tion for numerous Kentucky counties, including McCracken County. Because of the widespread outages, in accordance with the mutual aid agreement, JPEC requested assistance from Connexus.

Andrew Reichwein, a Minnesota resident and a Connexus employee, was sent to Kentucky to assist JPEC. On February 10, 2009, Andrew was climbing a JPEC electric pole when it snapped causing a transformer to crush his head resulting in his death.

On April 2, 2009, Andrew's widow, Deena Reichwein, was appointed administratrix of Andrew's personal estate by a Minnesota District Court, Probate Division. A workers' compensation claim was filed in Minnesota and benefits were paid. On March 8, 2010, Deena filed a petition with the probate division of the Jefferson District Court in Kentucky seeking an order "domesticating the appointment of a nonresident fiduciary" for the purpose of pursuing a wrongful death action against JPEC in Kentucky. The petition was granted on March 16, 2010, and Deena became the ancillary administratrix of Andrew's estate in Kentucky. On December 3, 2010, the estate filed this tort action in the McCracken Circuit Court against JPEC for wrongful death and for loss of spousal and parental consortium.

In its answer, JPEC asserted the statute of limitations and up-the-ladder immunity as defenses. It later filed a motion for summary judgment arguing that all claims, except the claim for loss of parental consortium, were barred by the statute of limitations because the complaint was not filed within one year of Deena's appointment as personal representative of Andrew's estate. The motion was granted, leaving the loss of parental consortium as the only remaining claim.

After JPEC was served with and answered four requests for admissions, it filed a second motion for summary judgment arguing that as a matter of law, the loss of parental consortium claim was barred by KRS 342.690(1), the exclusive remedy provision of the Kentucky Workers' Compensation Act, and KRS 342.610(2), providing for up-the-ladder immunity. In support of its motion, it filed an affidavit signed by Tracey Bensley, JPEC's vice president of engineering and operations, stating that JPEC has approximately eighty employees, including sixteen line technicians, eight crew leaders, and six apprentice line technicians. Among the primary responsibilities assigned to line technicians and crew leaders are maintaining electric distribution lines, responding to outage reports, and making necessary repairs to restore service to JPEC customers. JPEC receives numerous outage reports monthly and generally uses its own employees to respond and make any repairs.

The estate filed a response to JPEC's motion for summary judgment arguing that it should be afforded additional time to conduct discovery. Following a hearing, the circuit court granted JPEC's motion for summary judgment on the loss of parental consortium claim.

The estate appealed from both summary judgments. However, if the exclusive remedy and up-the-ladder provisions of the Act apply, the claims for wrongful death and the claims for loss of spousal and parental consortium are barred. *Hardin v. Action Graphics, Inc.*, 57 S.W.3d 844, 846 (Ky.App.2001). Because we conclude that all claims asserted by the estate are precluded by Kentucky's Workers' Compensation Act, we do not address whether the claims other than that for loss of parental consortium are barred by the one-year statute of limitations.

Summary judgment is proper if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Kentucky Rules of Civil Procedure (CR) 56.03. "The party opposing a properly presented summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing the existence of a genuine issue of material fact for trial." *City of Florence v. Chipman,* 38 S.W.3d 387, 390 (Ky.2001). When a summary judgment is granted, our review is *de novo. Burton v. Kentucky Farm Bureau Mut. Ins. Co.,* 326 S.W.3d 474, 475 (Ky. App.2010). As a part of our review, this Court must "consider whether the trial court gave the party opposing the motion an ample opportunity to respond and complete discovery before the court entered its ruling." *Blankenship v. Collier,* 302 S.W.3d 665, 668 (Ky.2010). However, the trial court's determination that a sufficient time has been given will not be disturbed absent an abuse of discretion. *Id.*

The initial question is whether the trial court properly applied Kentucky law or, as the estate argues, Minnesota law should have been applied because Andrew was a Minnesota resident who entered into an employment contract in Minnesota with a Minnesota employer. The estate alleges that under Minnesota law, its claims would not be precluded by provisions similar to those in Kentucky's Workers' Compensation Act.

Citing *Harris Corp. v. Comair, Inc.* 712 F.2d 1069, 1072 (6th Cir.1983), an action for indemnity, and non-published federal law, the estate argues that where the employment contract was entered into in a state other than Kentucky, the laws of that state are implicitly incorporated into that agreement and control. It contends that under Kentucky's choice of law test, Minnesota has the most significant rela-

tionship to the transaction and the parties. *Lewis v. American Family Ins. Group,* 555 S.W.2d 579, 581 (Ky.1977).

In an unpublished opinion, this Court rejected an identical argument. Because no published case directly addresses the issue and the case aptly sets forth the law, we quote and reaffirm its reasoning:

> If this were a contract action, [Appellant] would be correct that the law of the state with the greatest interest in the outcome of the litigation should be applied. *See Breeding v. Massachusetts Indemnity & Life Ins. Co.,* 633 S.W.2d 717 (Ky.1982). However, as a tort action, Kentucky case law clearly holds that any significant contact with Kentucky is sufficient to allow an application of Kentucky law. *See Foster v. Leggett,* 484 S.W.2d 827 (Ky.1972) (holding that the fact a Kentucky resident was killed in an automobile accident which occurred in Ohio was enough contact to justify the application of Kentucky law, even though the accident was in Ohio and the tortfeasor was an Ohio resident.) As this is an action in tort, "[w]hen the Court has jurisdiction of the parties its primary responsibility is to follow its own substantive law." *See Foster,* 484 S.W.2d at 829. Further, our Supreme Court has stated that "[l]aws unique to other jurisdictions, e.g., regarding statutes of limitations, interspousal immunity, worker's compensation, and comparative or contributory negligence, should not bind and define the public policy of Kentucky." *United States Fidelity & Guaranty Co. v. Preston,* 26 S.W.3d 145, 147–148 (Ky.2000).

*Petronis v. Churchill Downs, Inc.,* 2007 WL 1520018, *2 (Ky.App.2007) (2005–CA–001925–MR).

In *Petronis,* this Court held that although the injured employee was domiciled in New York, her employment agree-

ment was entered into in that state, and she was covered by workers' compensation in New York, the occurrence of her injury in Kentucky was sufficient contact for the Kentucky court to apply Kentucky law, including the exclusive remedy provisions of KRS 342.690(1). *Id.* at *3. We reach the same conclusion in this case. Andrew's fatal injury occurred in Kentucky and, therefore, under Kentucky's choice of law rules applicable to tort actions, Kentucky law applies.

Two statutory provisions are pivotal to our discussion: KRS 342.690(1) and KRS 342.610. KRS 342.690(1) provides in part:

> If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death. For purposes of this section, the term "employer" shall include a "contractor" covered by subsection (2) of KRS 342.610, whether or not the subcontractor has in fact, secured the payment of compensation.

A contractor for the purposes of KRS 342.690(1) is defined in KRS 342.610(2) as follows:

> A person who contracts with another:
>
> . . . .
>
> (b) To have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person ... shall ... be deemed a contractor, and such other person a subcontractor.

■ When read together, the statutes provide up-the-ladder immunity to a contractor for injuries incurred by an employ-ee of a subcontractor. *Fireman's Fund Ins. Co. v. Sherman & Fletcher,* 705 S.W.2d 459, 461 (Ky.1986). The purpose of the statutes is to prevent subcontracting to irresponsible people. *Id.*

As a threshold to its applicability, JPEC must have been a contractor that secured compensation. KRS 342.690(1). Relying on statements allegedly made by JPEC's President to OSHA investigators, the estate suggests that the mutual aid agreement was not a contract between JPEC and Connexus. However, in that same report, OSHA characterized JPEC as the contractor and Connexus as its subcontractor. Moreover, it is undisputed that JPEC and Connexus signed mutual aid agreements, Connexus performed work for JPEC, invoiced JPEC, and was paid by JPEC. It is immaterial that their agreement may not constitute a formalized written contract between only JPEC and Connexus. *Beaver v. Oakley,* 279 S.W.3d 527, 534 (Ky.2009).

Although the estate argues that JPEC had not secured the payment of compensation at the time of the accident, the record reveals that JPEC had workers' compensation insurance in Kentucky, as certified by the Department of Workers' Claims for the Kentucky Labor Cabinet. In *General Elec. Co. v. Cain,* 236 S.W.3d 579, 605 (Ky.2007), the Court held that a certificate provided by the Department is prima facia proof that a company has secured payment of compensation for purposes of KRS 342.690(1). "Absent evidence that the coverage was in some way deficient as to a worker, such a showing is enough to invoke the exclusive remedy provision[.]" *Id.*

The only evidence presented by the estate that the coverage in effect at the time of Andrew's accident was deficient was a statement by Bensley that he did not know if JPEC's workers' compensation insur-

ance would cover Connexus employees. Bensley's lack of knowledge regarding the interpretation of an insurance policy and the law is not evidence sufficient to rebut the presumption created by the certificate. Pursuant to KRS 342.610(2), benefits were payable under the JPEC policy if Connexus failed to provide coverage. Therefore, the trial court properly found that JPEC had secured payment of compensation for purposes of KRS 342.690(1).

In addition to the requirement that JPEC secured the payment of workers' compensation, for up-the-ladder immunity to apply, Andrew must have been injured while performing work which was a regular and recurrent part of JPEC's business. KRS 342.610(2). In *Cain*, the Court engaged in an extensive analysis of state and federal case law and ultimately defined the terms "regular and recurrent" as used in KRS 342.610(2)(b) as follows:

> Work of a kind that is a "regular or recurrent part of the work of the trade, business, occupation, or profession" of an owner does not mean work that is beneficial or incidental to the owner's business or that is necessary to enable the owner to continue in business, improve or expand its business, or remain or become more competitive in the market. It is work that is customary, usual, or normal to the particular business (including work assumed by contract or required by law) or work that the business repeats with some degree of regularity, and it is of a kind that the business or similar businesses would normally perform or be expected to perform with employees.

*Cain*, 236 S.W.3d at 588 (citation omitted). The Court continued and explained that the trial court must consider all relevant factors including the nature, size, and scope of the business "as well as whether it is equipped with the skilled manpower and tools to handle the task the independent contractor is hired to perform." *Id.* Finally, the Court offered the following examples:

> Employees of contractors hired to perform major or specialized demolition, construction, or renovation projects generally are not a premises owner's statutory employees unless the owner or the owners of similar businesses would normally expect or be expected to handle such projects with employees. Employees of contractors hired to perform routine repairs or maintenance that the owner or owners of similar businesses would normally be expected to handle with employees generally are viewed as being statutory employees.

*Id.* The facts of this case fall squarely within the last example given in *Cain* and, therefore, we conclude that JPEC is entitled to up-the-ladder immunity.

JPEC is an electrical cooperative engaged in the business of providing electricity to its customers. Repairing power lines is customary, usual, normal and repeatedly performed as part of JPEC's business by its employees. At the time of his accident, Andrew was repairing an electrical line, precisely the same duty routinely and recurrently performed by JPEC employees.

The estate emphasizes the existence of a FEMA emergency. It argues that because the 2009 FEMA emergency was a rare event and a situation beyond JPEC's recovery capabilities, the work performed by Andrew was not part of JPEC's regular and recurrent work. Further, the estate points out that Bensley testified that during the emergency, JPEC employee's were acting as "bird dogs," meaning they did not actually perform repairs but guided outside workers to the repair sites.

In *Cain*, the Supreme Court held that merely because the quantity of the work to

be performed is beyond the resources of a contractor does not mean that the work performed was not a regular and recurrent part of its business. It upheld a summary judgment for a contractor who obtained outside assistance "for jobs that involved more work than employees could handle, even on an overtime basis, or for jobs that had to be performed in a tight timeframe." *Id.* at 603.

Relying on *Cain,* in *Forbes v. Dixon Elec., Inc.,* 332 S.W.3d 733 (Ky.App.2010), this Court was presented with a similar argument advanced by the estate. Dixon Electric had a contract with the Lexington–Fayette Urban County Government (LFUCG) to provide for the installation of and repairs to traffic signals. As part of the contract, it was required to provide traffic control at any intersection it was performing work. If an intersection was particularly busy, Dixon Electric would request flagging assistance from the police department. Officer Andrew Forbes was injured while providing assistance to Dixon Electric. *Id.* at 734.

The Court applied the *Cain* test and held that because Dixon Electric was required to provide traffic control as part of its regular and recurrent business, it was a contractor at the time of the accident. It cited with approval the circuit court's reasoning: "Even assuming . . . that only police officers could conduct traffic control at busy intersections with the traffic signals inoperable, because traffic control was a contractual obligation of Dixon Electric with LFUCG, said traffic control was a 'regular' or 'recurrent' part of Dixon's work for LFUCG." *Id.* at 736.

There is no dispute that JPEC was required to maintain and restore electrical power to its customers. Although the demands created by the ice storm and the FEMA emergency necessitated that JPEC seek outside assistance in restoring power, it remained a regular and recurrent part of its business. Therefore, JPEC was the contractor and Connexus was the subcontractor at the time of Andrew's accident, and JPEC is entitled to up-the-ladder immunity.

It is undeniably tragic that Andrew died while performing a public service during a declared emergency. However, the estate's suggestion that additional time for discovery would change the result in this case is without a realistic basis. Regardless of the discovery conducted, the fact will remain that Andrew was engaged in work of a type that was a regular and recurrent part of JPEC's business. Based on the undisputed facts, we are convinced that JPEC is entitled to up-the-ladder tort immunity from the estate's claims.

Based on the forgoing, the summary judgments of the McCracken Circuit Court are affirmed.

ALL CONCUR.